703 So.2d 953 (1997)
Ex parte RUSSELL CORPORATION, et al.
(Re Joe SULLIVAN, et al.
v.
RUSSELL CORPORATION, et al.).
1960143.
Supreme Court of Alabama.
October 17, 1997.
*955 Hobart A. McWhorter, Jr., Norman Jetmundsen, Jr., and David G. Hymer of Bradley, Arant, Rose & White, L.L.P., Birmingham, for petitioners Russell Corporation and Avondale Mills, Inc.
John P. Scott, Jr., James A. Bradford, and Robert P. Fowler of Balch & Bingham, Birmingham, for petitioner Alabama Power Company.
J. Gusty Yearout of Yearout, Myers & Traylor, Birmingham; Bill Thomason, Vestavia; and M. Clay Ragsdale, Birmingham, for respondents Joe Sullivan and Darnell Sullivan.
William J. Wynn, pro se.
BUTTS, Justice.
The Russell Corporation ("Russell"), Avondale Mills, Inc. ("Avondale"), and Alabama Power Company ("APCo"), defendants in the action below, have petitioned this Court for a writ of mandamus directing Judge William J. Wynn of the Jefferson Circuit Court to grant their motion to vacate his order of July 31, 1996, granting the plaintiffs' motion for class certification or, in the alternative, to order Judge Wynn to grant their motion to transfer this case to the Tallapoosa Circuit Court. We grant the petition and order Judge Wynn to vacate the order certifying a class.

I. PROCEDURAL HISTORY
Because of the complexity of the procedural history of this case, and the relevance of much of that history to the issues before this Court, we set forth the following discussion. In March 1993, Joe Sullivan and his wife Darnell Sullivan filed a complaint in the Jefferson Circuit Court against Russell, Avondale, and APCo and also against Russell Lands, Inc., and the City of Alexander City.[1] The Sullivans own a lot in the Raintree subdivision, located within the city limits of Alexander City; that subdivision is adjacent to the Elkahatchee Creek arm of Lake Martin. Their complaint alleged that the waters of Lake Martin and the sediments on the floor of the lake in the area of the Raintree subdivision are contaminated by pollutants and that the waters therefore are not fit for recreational use; the complaint stated claims alleging nuisance, trespass, and wrongful interference with the Sullivans' right to peaceable use and possession of their property. In sum, the Sullivans alleged that Russell and Avondale used carcinogenic dyes in their textile manufacturing processes and that these dyes are present in the untreated wastewater  up to 5.5 million gallons of it per day  that the defendants send to Alexander City's Sugar Creek wastewater treatment plant; that the treatment plant cannot remove the dyes from the water; that the treated wastewater is discharged into Sugar Creek, which flows into Lake Martin near the plaintiffs' home; that the carcinogenic dyes deeply stain the lake water, are hazardous to recreational users of the lake, are resistant to normal degradation, accumulate as a sludge on the bottom of the lake (property owned by the defendant APCo); and that the defendants' use of chlorine to make the dyes less visible to the human eye causes the dyes to be even more carcinogenic. The Sullivans sought compensatory damages, including damages for diminution in value of their property and for mental anguish, and punitive damages. The Sullivans amended their complaint to add seven other Raintree subdivision property owners as plaintiffs and to add Martha Cochrane and City Realty, Inc., as defendants.[2]
In May 1993, the defendants filed motions to dismiss the complaint or to transfer the case to the Tallapoosa Circuit Court. The trial court denied the motions. In August 1993, Russell, Russell Lands, APCo, Avondale, and Alexander City petitioned this Court for a writ of mandamus directing the Jefferson Circuit Court to transfer the case to the Tallapoosa Circuit Court. In Ex parte Alabama Power Co., 640 So.2d 921 (Ala. 1994), this Court held that under Ala.Code 1975, § 6-3-11, venue as to Alexander City was proper only in Tallapoosa County, but *956 that venue was proper in Jefferson County as to the other defendants. The Court also held that the defendants had failed to show that the trial court had abused its discretion in refusing to transfer the case to the Tallapoosa Circuit Court under Ala.Code 1975, § 6-3-21.1, which codifies the doctrine of forum non conveniens. The plaintiffs responded to this Court's opinion by voluntarily dismissing Alexander City from the lawsuit. The plaintiffs also eventually dismissed City Realty, Cochrane, and Russell Lands, leaving only Russell, Avondale, and APCo as the defendants.
In March 1994, APCo filed a motion with the trial court to allow a third-party complaint against Alexander City; the trial court denied the motion. In July 1994, APCo petitioned this Court for a writ of mandamus directing the Jefferson Circuit Court to allow APCo to serve a third-party complaint on Alexander City; this Court denied the petition. The trial for the case had been set for August 1994, but it was rescheduled for April 1995.
In March 1995, Russell and Avondale filed another motion with the trial court requesting transfer of the case to the Tallapoosa Circuit Court based on the doctrine of forum non conveniens; the trial court denied the motion. Later that same month, the case was removed to a federal district court on motion of APCo; however, it was shortly thereafter remanded to the Jefferson Circuit Court. The trial was rescheduled from April 1995 to November 1995, and then to January 1996. In December 1995, APCo filed yet another motion to transfer the case to the Tallapoosa Circuit Court, and the trial court again denied the motion.
During the period from March 1995 into January 1996, the plaintiffs and the defendants engaged in settlement negotiations. Apparently, the defendants were not interested in any settlement unless, in addition to providing any compensatory damages to the named plaintiffs, it would be on behalf of the entire group of Raintree property owners and would involve injunctive relief to be administered in Tallapoosa County, because the defendants did not want any additional lawsuits to follow the settlement of the individual action of the named plaintiffs. However, no settlement was reached, and in January 1996 the trial court ordered that the case be sent to mediation and, in case mediation failed, rescheduled the trial for April 1996.
The mediation efforts did not result in a settlement, and in February 1996 the plaintiffs amended their complaint to include class action allegations. The amended complaint described the plaintiff class as being "all residents and property owners of Raintree Subdivision property bordering on Lake Martin, Alabama." The defendants opposed certification of this class.
In March 1996, the trial court held a lengthy hearing on class certification and that same month provisionally certified a Rule 23(b)(3), Ala. R. Civ.P., class. The trial court's March 18, 1996, order stated, in relevant part:
"A two-hour (plus) hearing was held on March 11, 1996, concerning plaintiffs' Amended Complaint, plaintiffs' Motion for Class Certification, defendants' Motion to Strike, Motion to Strike or Continue Motion for Class Certification, Motion to Strike Amended Complaint, and plaintiffs' responsive motions thereto.
"The transcript of the above proceeding is replete with evidence of charged emotions, atypical of the demeanor befitting attorneys at the bar.
"Thereafter, this Court has been able to review its notes, as well as briefs submitted after the hearing, together with the motions and briefs mentioned hereinabove, and finds as follows:
"....
"Of course, defendants rightfully point out the nearly three years of age this case has reached. However, probably half of said time was spent in appellate endeavors sought by defendants, which, though unsuccessful, stayed discovery for lengthy periods.
"....
"The Court questioned plaintiffs regarding the motion to seek class certification coming only six weeks before trial. Plaintiffs contend that newly found evidence (found by defendant Russell in December *957 '95 or January '96), and newly discovered evidence of potentially higher levels of chlorides or chlorine (as represented to the court by plaintiffs to have come from the deposition of Russell's environmental engineer, Dr. Tuggle), could amount  or so plaintiffs contend, as `officers of the Court'  to higher levels of toxicity (hence, potentially impacting on issues of trespass and nuisance on a much larger scale) and (per Dr. Tuggle), feasible, existing remedies to problems plaintiffs have alleged.
"This Court finds that in the interest of greatest justice to the greater number of persons and entities, amendment and class certification considerations far outweigh this one Court's present trial docket setting and its expectation and wish for a simple `five named plaintiffs versus three named defendants' jury trial.
"Weighty items to be countenanced and considered are the multiplicity of lawsuits, multiplicity of appeals, judicial economy, time and resources of the litigants and even the professional obligation and duty imposed upon an attorney to address the aforementioned issues and try an otherwise simple case as a class action, if other potential litigants are known to exist and are believed to have suffered damage (provided the requisite commonality exists). Indeed, ... a practitioner [who represents] certain plaintiffs, after being made award of the potential existence of a class, and after moving to certify the case as a class action, may be held derelict in his duty if he does not persevere tenaciously so as to prevent exclusion of putative class members from any relief awarded.
"This Court was given case citations and actual copies of ... Sterling v. Velsicol Chemical Corp., 855 F.2d 1188 (6th Cir. 1988), Arkansas Education Association v. Board of Education of Portland, 446 F.2d 763 (8th Cir.1971), Joseph v. General Motors Corp., 109 F.R.D. 635 (D.Colo.1986), and In re American Medical Systems, Inc., 75 F.3d 1069 (6th Cir.1996).
"The undersigned has reviewed the above cases and all other cases cited on Rule 15 and Rule 23, [Ala. R. Civ.P.], as well as Rule 6 ... and the committee comments.
"It is hereby ordered that the case is continued from its trial setting of April 15, 1996.
"It is further ordered that, in the interest of justice for all parties, this matter is provisionally certified as a class action under Rule 23(b)(3), [Ala. R. Civ.P.].
"....
"It is further ordered that on May 13, 1996, at 4:30 p.m., the final hearing on unconditional class certification vel non will be held."
(Emphasis original.)
Following the trial court's provisional certification of the plaintiff class, the defendants began efforts to oppose final class certification. Their representatives interviewed a number of property owners in the Raintree subdivision, including some Russell employees, in order to obtain affidavits stating that these persons did not wish to be parties in the lawsuit. The plaintiffs responded by moving the trial court to preclude the defendants from communicating directly with class members and to bar the use of any evidence obtained by the defendants through such communication. Russell and Avondale filed a response to the motion, and the trial court held a hearing on the plaintiffs' motion on May 7, 1996.
In June 1996, the defendants filed motions opposing class certification, and the trial court held a hearing on the motions. The defendants also filed motions requesting a change of venue to Tallapoosa County based on the doctrine of forum non conveniens, if the class was certified, and motions to stay a final ruling on class certification.
On July 31, 1996, Judge Wynn issued an order granting final class certification. That order stated:
"This matter having come before this Court on plaintiffs' Motion for Final Class certification and the Court, after a duly scheduled hearing with notice to all parties held on June 17, 1996, after considering the voluminous submission by all parties and the relevant case law submitted in support and opposition thereto, and after *958 considering the various pending motions relating to Class certification including plaintiffs' Motion to Preclude Affidavits and Testimony obtained by defendants from Class members and Defendants' response thereto, it is hereby Ordered and Decreed:
"A. NUMEROSITY:
"The Court finds that it being without dispute that the Class consists of the ownership of approximately sixty residential parcels of land in the Raintree Subdivision of Lake Martin being owned [separately] or jointly by approximately one hundred and fifteen ... persons. The Court further finds that joinder of the Class members as parties would cause them strong litigational hardship given the expense and complexity of this case and the natural fear or reluctance on the part of many Class Members who are employees or economically dependent on the defendants to bring this action on an individual basis. See Arkansas Ed. Association v. Bd. of Education, 446 F.2d 763 (8th Cir.1971).
"The Court also has before it the twenty affidavits and seven depositions from persons ... within the defined Class, all of whom testify, in substance, that they do not intend to nor wish to proceed in a Class Action case against Russell Corporation. The affidavits were procured after this Court conditionally certified the Class, and the plaintiffs have objected to the introduction of the evidence on the grounds that contact with prospective Class Members by defendants after Certification is, as plaintiffs contend, prohibited. The Court however, while it has previously expressed its concern regarding the contact by the defendants' counsel with these Class Members, is not, at this stage, inclined to preclude the admission of the affidavits and deposition testimony for the limited purpose ... for which they are offered. However, the Court is concerned that the circumstances under which the affidavits and testimony were procured reflect adversely on the reliability of the testimony and, as importantly, could be seriously prejudicial to the rights of the Class members from whom the affidavits were obtained as well as other potential Class Members should this Court rely on the testimony in rejecting plaintiffs' attempt to certify this Class on the basis of numerosity. Also instructive is testimony from certain of the deposed prospective Class Members to the effect that their opinions could change if they were informed that the pollution of the water was as severe as plaintiffs claim.
"While the Court finds that the numerosity requirement is met with or without the affidavits and deposition testimony, the Court is persuaded that the affidavits and deposition testimony raise a question as to whether the numerosity requirement will remain satisfied if, after notice, sufficient numbers of the Class opt out. The court will, therefore, reconsider this element after the expiration of the opt-out period.
"B. COMMONALITY:
"In addressing the issue of commonality, the Court finds ample authority to support the plaintiffs' contentions that Rule 23(a)(2) is satisfied. This rule is satisfied even where individual members are required to show their particular right to recover or sustain varying degrees of injury. Jennings Oil Co. v. Mobil Oil Corp., 80 F.R.D. 124 (S.D.N.Y.1978); Gerdom v. Continental Airlines, Inc., 648 F.2d 1223 (9th Cir.1981). Plaintiffs' claims raise numerous questions of law and fact common to the Class including the nature and extent of pollution in the water column in the area of Raintree, the source and treatability of the pollution, the degree to which the pollution causes potential danger and risk to the health of persons coming in contact with the water thereby adversely impacting property values and causing mental anguish, whether defendants' conduct warrants punitive damages, and whether defendants are liable under common law theories of nuisance and trespass.
"C. TYPICALITY:
"Similarly, the plaintiffs' claims are typical. All plaintiffs reside [near] a confined area of the lake which receives, according to the plaintiffs' allegations, large concentrations of pollution. Their damages, *959 if proven, would, therefore, all stem from a common event or course of conduct. See Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 64 (S.D.Ohio 1991); Penn v. San Juan Hospital, Inc., 528 F.2d 1181 (10th Cir.1975).
"D. ADEQUACY OF NAMED REPRESENTATIVES:
"The adequacy of counsel and the named representatives is likewise met. The respective plaintiffs and counsel have exhaustively and vigorously pursued this complex case, have retained experts on water quality from Auburn University, University of Alabama, and [Georgia Institute of Technology], have repeatedly responded to voluminous depositions and other discovery and are represented by willing and able counsel. All of the named plaintiffs (with the exception of William R. Bailey, who died during the pendency of this case) now reside or have an ownership interest in property in the affected area, and have no interests antagonistic to the Class as a whole and have adequately demonstrated their commitment to the case and their ability to represent the Class and its interests. The record demonstrates that the plaintiffs will fairly and adequately represent this Class and that their interests are not antagonistic to the claims of the Class members.
"The Court having found that all the requirements of a Class have been met, the plaintiffs are hereby ordered to publish notice to the Class in a form and of content as approved by the Court. The notice shall state that every Class Member shall have forty-five (45) days from publication to opt out of the Class.
"Within ten (10) days from the expiration of the forty-five (45) day period, the plaintiffs shall file with the Court a paper identifying each person opting out of the Class. Within ten (10) days of service of plaintiffs' list of persons opting out, any party may submit written argument on whether the Class should be decertified because of the results of the Notice and Opt-out procedure.
"Case is continued from the August 5, 1996, trial setting.
"DONE AND ORDERED this 31st day of July, 1996."
In August 1996, Russell and Avondale moved the trial court to stay all further proceedings, including review, approval, and issuance of class notice, until it ruled on the motion to transfer that they had filed in June 1996. The trial court held a hearing on those motions in August. In September 1996, the plaintiffs submitted responses to the defendants' motion for a stay, and they also filed for the trial court's approval a proposed class notice form. The notice form defined the class as "All persons who as of March 15, 1991, and thereafter ... were or are owners of real property (excluding mortgagees and excluding lessees with no contractual right to purchase) located within the Raintree Subdivision of Lake Martin." In October 1996, the defendants filed with the trial court a response opposing the proposed class notice. The trial court denied the motion to transfer, denied the motion to stay, and approved the proposed class notice form.
On October 30, 1996, the defendants filed the mandamus petition now before this Court. We ordered an answer and briefs, stayed proceedings in the underlying case, and granted the defendants' motion for oral argument. The parties have submitted briefs and numerous volumes of exhibits from the trial court record, and they have made oral arguments.

II. ISSUES
The petition raises two issues: (1) Did the trial court abuse its discretion in certifying the class of plaintiffs, and, if not, (2) did the trial court abuse its discretion in denying the defendants' motion to transfer the class action to Tallapoosa County, pursuant Ala.Code 1975, § 6-3-21.1?
A trial court's order certifying an action as a class action may be challenged by a petition for a writ of mandamus. Ex parte Gold Kist, Inc., 646 So.2d 1339 (Ala.1994); Ex parte Blue Cross & Blue Shield of Alabama, 582 So.2d 469 (Ala.1991). A petition for the writ of mandamus is also a proper means by which to seek review of a trial court's ruling on a motion to transfer an *960 action based on the doctrine of forum non conveniens. Ex parte Prudential Ins. Co. of America, 675 So.2d 856 (Ala.1996); Ex parte Integon Corp., 672 So.2d 497 (Ala.1995). However, class certification is generally left to the sound discretion of the trial court, Ex parte Gold Kist, supra, and a writ of mandamus ordering a transfer will not issue except upon a clear showing that the trial court erred in refusing the transfer. Ex parte Prudential, supra.

III. CLASS CERTIFICATION

A. The Defendants' Arguments
The defendants make several arguments as to why, they say, the trial court abused its discretion in certifying the plaintiff class. First, the defendants say it was an abuse of discretion to certify a class three years after the commencement of the action, a year-anda-half after the initial trial setting in the case, without the plaintiffs' having moved under Rule 15(a), Ala. R. Civ. P., for permission to amend the complaint to add class allegations, and, they say, without the plaintiffs' having shown "good cause" for the delay. The defendants say that the amendment was not one of right and that the plaintiffs had no new facts or evidence to support the requisite finding of good cause to file the amendment.
Second, they claim the plaintiffs filed the amendment asserting class allegations in an attempt to coerce a monetary settlement of the individual claims. The defendants say that a January 31, 1996, letter from the plaintiffs' counsel, stating that unless the case could be settled the plaintiffs would ask for class certification, was actually a threat of "blackmail." The defendants seem to imply to this Court that the plaintiffs' counsel used the threat of a costly class action in an attempt to obtain a settlement of the individual claims in an amount far greater than what they were worth, and they say the plaintiffs' counsel have now made good on the threat by obtaining class certification.
Third, the defendants argue that the class action certification, coming at this point in the litigation, will be extremely prejudicial to them in that the number of claims they will have to defend will increase dramatically. They also say that a large amount of additional discovery is now also needed, over 100 depositions and appraisal of more than 70 parcels of real property. They contend that the time and expense required by this additional discovery and by increasing the complexity of the case as a class action are so prejudicial to them that the trial court abused its discretion in certifying the class.
Next, the defendants claim that the trial court abused its discretion in certifying the class because, they say, the plaintiffs did not satisfy their burden of meeting all the requirements of Rule 23(a), Ala. R. Civ. P. They argue that the class representatives have not shown that they will fairly and adequately protect the interests of the class. See Rule 23(a)(4). The defendants say that the named plaintiffs' three-year delay in asserting class allegations is evidence that the plaintiffs lacked an interest in prosecuting class claims. The defendants also say that the named plaintiffs and class counsel have done a poor job in representing the interests of the entire class  they stress that the plaintiffs have dismissed certain defendants, such as Alexander City, which is the only entity that actually discharges water directly into Lake Martin, and have also failed to assert certain potentially viable claims, such as claims of fraud and personal injury, simply in order to preserve venue in Jefferson County. In addition, the defendants argue that the named plaintiffs have a direct conflict with certain members of the class who have testified through affidavit or deposition that they do not believe the water quality of Lake Martin affects the value of their property and that they do not want to be represented by the named plaintiffs or by class counsel. The defendants argue that there is even further conflict between the named plaintiffs and class members in that two members of the plaintiff class, Russell Lands and Cochrane, were actually defendants in this action in its early stages.
Finally, the defendants argue that the trial court abused its discretion in certifying the class because, they say, the plaintiffs did not satisfy the requirements of Rule 23(b)(3), Ala. R. Civ. P. The defendants say that the *961 plaintiffs did not show that questions of law or fact common to the class predominate over questions involving only individual members. They contend that the trial court failed to conduct a predominance inquiry at all and ignored the fact that the nuisance claims and the alleged mental anguish injuries are subjective. In sum, the defendants contend that the class certification must be vacated because, they say, there is no class-wide method of determining the amount of damages. The defendants further contend that the plaintiffs did not make the required showing under Rule 23(b)(3) that a class action is superior to individual actions as a means of adjudicating the controversy. They contend that a class action is not superior because, they say, individual issues predominate, it is undesirable to concentrate the litigation in Jefferson County rather than Tallapoosa County, and it will be difficult to manage the case as a class action because every plaintiff will have to testify regarding the issue of damages and the jury will have to reach over 100 separate verdicts in a single trial.

B. The Plaintiffs' Arguments
The plaintiffs make several arguments in response to the defendants' first reason why it was an abuse of discretion for the trial court to certify a class action three years after the commencement of the action. First, the plaintiffs say that they did move the trial court to be allowed to amend their complaint to add class allegations, by filing a motion for leave to amend that was supplemented by an oral motion during a hearing before the trial court. They argue that there were various factors relating to their showing of good cause for amending their complaint, particularly newly discovered evidence indicating that the defendants had increased the chlorination of their wastewater in an attempt to make the dyes less visible to the human eye; the plaintiffs say that the chlorination increase greatly exacerbated the pollution problem and contradicted the defendants' public position that the problem was being remedied. The plaintiffs say they also had recently learned that a dyeing and finishing operation Russell owns in Scotland uses a process other than chlorination to treat its wastewater, and they say this fact contradicts Russell's position that other treatment technologies were not feasible. The plaintiffs also say that a class action was contemplated by the defendants as well as the plaintiffs, because, they say, the defendants had maintained during the failed mediation that any settlement would have to be on a class basis. Finally, at oral argument the plaintiffs' counsel contended that much of the three-year delay in their asserting class allegations was caused by delays in the litigation process created by the defendants, e.g., multiple mandamus petitions filed with this Court challenging venue, and a failed attempt to remove the case to a federal court.
In response to the defendants' argument that the plaintiffs' filing of an amended complaint asserting class allegations was "blackmail" to induce the defendants to settle, the plaintiffs simply say that the defendants have no basis for that argument. As noted above, the plaintiffs say that during the mediation process the defendants anticipated and indicated that any settlement of the case would have to include a class of plaintiffs. The plaintiffs say that Russell and Avondale's counsel even admitted in open court that the case could not be settled except as a class action.
The plaintiffs respond to the defendants' argument that class certification would be extremely prejudicial to them by contending that class certification is actually beneficial to the defendants in that it minimizes the likelihood of multiple lawsuits against the defendants, multiple appeals, and the inherent litigational difficulties caused by multiple claims. In sum, the plaintiffs argue that the class action format actually simplifies matters for the defendants because issues common to all plaintiffs, such as the defendants' liability, would need to be litigated only once.
The plaintiffs make several arguments in response to the defendants' contention that they did not satisfy their burden under Rule 23(a) to prove that the class representatives (plaintiffs and counsel) will fairly and adequately protect the interests of the class. First, the plaintiffs argue that their counsel have fairly and adequately represented the interests of the class, and will continue to do *962 so, because, they say, their counsel are qualified and experienced to conduct the litigation and have demonstrated a commitment to do so by obtaining the best water-quality experts available, by spending large sums of money on expert witness fees, by fighting what they call delay tactics and abusive discovery requests, and by fighting repeated attempts for a transfer to Tallapoosa County.
Next, the plaintiffs defend their reasoning behind dismissing Alexander City as a defendant. They argue that this Court's earlier opinion arising out of this dispute, Ex parte Alabama Power Co., 640 So.2d 921 (Ala. 1994), required them to dismiss Alexander City or face a transfer of the case to Tallapoosa County, where, they say, Russell and Avondale employ 25% of the adult population and control public opinion. The plaintiffs contend that they cannot get a fair trial in Tallapoosa County, because of the defendants' economic and civic influence there, and they say they had no choice but to dismiss Alexander City as a defendant so as to maintain venue in Jefferson County. Thus, they say that dismissing Alexander City does not indicate they are not proper class representatives. The plaintiffs further defend the dismissal of Alexander City by arguing that Alexander City is merely a conduit for the millions of gallons of wastewater generated each day by Russell and Avondale, and they say that it is Russell and Avondale that have paid for the chlorinization process employed at the Sugar Creek wastewater treatment plant.
In response to the defendants' argument that the class counsel will not fairly and adequately represent the class because it may include persons who do not wish to be involved in the litigation, the plaintiffs say that the fact a class may initially include some persons not wishing to participate is not critical at this stage of the litigation because the class was certified as a Rule 23(b)(3) opt-out class. Further, the plaintiffs argue that the defendants acted improperly by contacting certain members of the plaintiff class after the trial court's provisional certification and by obtaining affidavits indicating that those persons did not wish to participate in the class action. The plaintiffs claim that these actions by the defendants were highly improper because, they say, these actions constituted direct contact with the class counsel's own clients, and that the tactic that has been rejected by the federal courts.
Finally, the plaintiffs make several arguments in response to the defendants' contention that they did not satisfy their burden under Rule 23(b)(3) to prove that questions of law or fact predominate, and that adjudicating the controversy through a class action is superior to adjudicating the controversy through individual actions. The plaintiffs first note that there is no requirement that a class action be devoid of individual issues, and they say that the individual issues in this case involve questions regarding the damage suffered by the various plaintiffs while the common issues pertaining to liability predominate. The plaintiffs refer this Court to several cases, such as Sterling v. Velsicol Chemical Corp., 855 F.2d 1188 (6th Cir.1988), and Boggs v. Divested Atomic Corp., 141 F.R.D. 58 (S.D.Ohio 1991), in which courts have recognized that issues relating to liability predominate over individual issues in environmental mass tort cases concerning a single course of conduct by a defendant, and that the class action is favored over multiple individual lawsuits. In sum, the plaintiffs contend that the trial court did not err in holding that these nuisance and trespass claims are appropriate for class action relief.

C. Discussion

1. Amending the Complaint to Add Class Allegations
Did the trial court abuse its discretion by allowing the plaintiffs to amend their complaint to add class allegations nearly three years after the initial complaint was filed? There is no merit to the defendants' argument that by filing the amended complaint adding class allegations the plaintiffs were attempting to "blackmail" the defendants into a favorable settlement or that they will be unduly prejudiced by litigating this case as a class action. Recent judicial decisions indicate that "mass tort" environmental claims are quite appropriate for resolution by the class action process ("More and more *963 trial and appellate courts are now recognizing that a central judicial tool for coordinating a multitude of related tort claims is the flexible use of the class action device. Asbestos personal injury and property damage suits evidence a growing trend of counsel and the courts to rely on the class action device to dispose of carefully selected common issues affecting the entire class." Herbert Newberg and Alba Conte, Newberg on Class Actions § 17.05 (3d ed.1992) (footnote omitted)).
There was a significant delay by the plaintiffs in seeking to allege class claims; however, the defendants' vigorous defense of this case has accounted for much of the delay in this prolonged litigation. The defendants have filed three mandamus petitions with this Court and have attempted to have the case removed to a federal court. For example, the trial was originally set for August 1994; in July 1994, APCo petitioned this Court for a writ of mandamus and the trial had to be rescheduled. The trial was reset for April 1995; in March 1995, the defendants had the case removed to a federal court, and, although the case was ultimately remanded to the state court, the trial had to be rescheduled. Given that the plaintiffs are not entirely responsible for the delay in asserting class allegations, and that they have claimed newly discovered evidence relating to extensive chlorinization of the wastewater at issue and relating to the existence of alternative treatment technologies, which evidence they say makes class relief appropriate, the trial court was within its sound discretion in allowing the plaintiffs' class action amendment.

2. Fair and Adequate Representation
Do the class representatives and their counsel fairly and adequately represent the interests of the class, as required by Rule 23(a)(4)? Little weight can be given to the defendants' argument that the class representatives do not fairly and adequately represent the class because their interests are supposedly in conflict with certain class members who signed affidavits stating they did not wish to be involved in the litigation or to be represented by the named plaintiffs and their counsel. The defendants obtained these affidavits from certain class members before the final certification of the class, but after provisional class certification. This type of contact by a defendant with provisional class members threatens to infringe on the constructive attorney-client relationship that is created upon provisional certification of the class and invokes ethical considerations. However, because the trial court did not grant the plaintiffs' motion to enjoin the defendants from contacting provisional class members and because the plaintiffs have not shown that the defendants' communication with these provisional class members was threatening or abusive, this Court will not strike the affidavits from the record. However, such affidavits of noninterest obtained by a defendant are generally inappropriate at a class certification hearing, see Newberg on Class Actions, supra, at § 15.19, and they are of little weight in this case.
Much greater weight must be given to certain other arguments made by the defendants regarding the issue whether the class representatives and their counsel fairly and adequately represent the interests of the class. This requirement encompasses two considerations. First, the attorneys representing the class must be qualified, experienced, and generally able to conduct the litigation. Second, the class representatives must not have interests antagonistic to those of the class. Amchem Products, Inc. v. Windsor, ___ U.S. ___, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). There is no doubt that the plaintiffs' counsel are experienced and well-qualified attorneys, and it appears that they have spent a great deal of time and effort in this litigation. However, as explained more fully below, the question is whether the class representatives fairly and adequately represent the interests of all the members of the class.
A central issue in this case has been the plaintiffs' choice of venue. The class representatives, apparently on advice of counsel, have chosen to litigate this action in the Jefferson Circuit Court rather than in the Tallapoosa Circuit Court. They have strongly resisted the defendants' numerous attempts at obtaining a transfer to Tallapoosa County. Although the plaintiffs have valid, *964 defensible reasons for wishing to litigate this case in a forum other than Tallapoosa County, where two of the defendants are major employers and where, the plaintiffs allege, those two defendants have great influence over public opinion, the plaintiffs' choice of forum has been made at great cost to the plaintiff class. The plaintiffs have dismissed a defendant, Alexander City, in order to prevent the possibility of a transfer to Tallapoosa County. More critically, the class representatives have failed to allege certain claims against the defendants, namely claims for certain forms of injunctive relief, solely in order to preserve venue in Jefferson County. These "unfiled claims" are so potentially significant in this environmental pollution case that we must conclude that the class representatives' interests conflict with those of the plaintiff class.[3] See Newberg, supra, at § 17.11 ("Failure to plead all causes of action raises potential problems that may hurt class members on res judicata grounds by splitting their causes of action and barring future suits....").
The plaintiffs' complaint against Russell, Avondale, and APCo seeks monetary damages for the economic injury and the mental anguish they claim to have suffered as the result of alleged contamination of that area of Lake Martin adjacent to their subdivision. Specifically, the named plaintiffs have alleged that Russell and Avondale use textile dyes that are carcinogenic to humans, that the dyes are not removed by the wastewater treatment process, and that up to 5.5 million gallons of the wastewater is discharged daily into a tributary of Lake Martin, causing the lake water and sediment in the area adjacent to their subdivision to suffer from contamination by carcinogenic waste. The class representatives further claim that the chlorinization process used by Russell and Avondale to treat the dye wastewater has increased its toxicity, rather than removing the carcinogenic dyes from the water. Given those allegations, it is contradictory that the class representatives have sought economic damages because they say the contamination has caused them to lose the enjoyment of their property and to suffer mental anguish, yet have not sought to enjoin the defendants from continuing the discharges they complain of and have not sought medical monitoring of class members for the potential latent effects of exposure to the alleged cancer-causing contamination.[4] These two types of injunctive relief are common to environmental class actions and, in fact, such relief was sought in the environmental contamination class actions the named plaintiffs have specifically cited as supporting their position that this case is proper for class relief. See Sterling v. Velsicol Chemical Corp., supra; Boggs v. Divested Atomic Corp., supra; Ouellette v. International Paper Co., 86 F.R.D. 476 (D.Vt.1980); and Oakwood Homeowners Ass'n v. Ford Motor Co., 77 Mich.App. 197, 258 N.W.2d 475 (1977). Thus, the decision of the class representatives to forgo seeking any form of injunctive relief is highly detrimental to the rights of the other class members.
Although this is a Rule 23(b)(3) class action that allows plaintiffs to opt-out of the class, the complexity of this environmental pollution case and the great cost to litigate the claims in individual actions  factors which weigh heavily in favor of class relief  would significantly discourage otherwise interested *965 class members from opting out of the class and pursuing their own individual actions that would include claims for injunctive relief. Class representatives should not place such a burden on class members. Thus, certification of this class and continued litigation of the limited claims alleged to a final judgment would have, under the doctrine of res judicata, the very likely effect of barring all the members of the plaintiff class from ever seeking injunctive relief in relation to the alleged environmental contamination caused by the defendants' present alleged course of conduct. Although the named plaintiffs have implied that injunctive relief would be a part of any class settlement, an attempt at reaching a settlement through mediation failed and it cannot be assumed that such a settlement would occur in the future.
In sum, the named plaintiffs are free to take whatever steps are legally available to them in order to pursue their personal strategy of litigating their chosen claims in a forum other than Tallapoosa County. However, the named plaintiffs, by entirely forgoing any and all types of injunctive relief for the sole purpose of maintaining venue outside Tallapoosa County, have failed to fairly and adequately represent the interests of all members of the class. The trial court abused its discretion in finding that the plaintiffs had met the requirement of Rule 23(a)(4). Accordingly, the writ of mandamus requested by the defendants will issue and Judge Wynn of the Jefferson Circuit Court will be directed to vacate his order certifying the class.

3. Predominance of Common Issues
Finally, although the trial court abused its discretion in certifying the class, it would be wise to address now an additional issue raised by the defendants  whether the trial court erred in holding that the plaintiffs had made the requisite showing under Rule 23(b)(3) that questions of law or fact common to the class predominate over questions involving only individual members. The defendants say that the issues of damages are individual to each plaintiff, and they contend that those issues predominate over the common issues relating to liability on each of the plaintiffs' claims. However, the following conclusion by the court in Sterling v. Velsicol Chemical Corp., 855 F.2d at 1196-97, regarding the use of the class action device in relation to mass torts such as this environmental case, where issues of the defendant's liability are common to all plaintiffs is worth noting:
"While some courts have adopted this justification [individualization of issues] in refusing to certify such accidents as class actions, numerous other courts have recognized the increasingly insistent need for a more efficient method of disposing of a large number of lawsuits arising out of a single disaster or a single course of conduct. In mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next. No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.
"... [W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy."
Thus, although the facts and issues involved in this controversy make it particularly appropriate for class relief, for the reasons discussed above the trial court abused its discretion in certifying a class.

IV. CONCLUSION
Because the defendants' petition for a writ of mandamus is granted and Judge Wynn is directed to vacate his order certifying the class, the defendants' alternative request to transfer the class action to the Tallapoosa Circuit Court based on the doctrine of forum non conveniens need not be addressed.
WRIT GRANTED.
*966 HOOPER, C.J., and HOUSTON, J., concur in the result.
MADDOX and SEE, JJ., concur in the result, but dissent from the failure to reconsider the venue issue.
SHORES and COOK, JJ., dissent.
HOUSTON, Justice (concurring in the result).
I do not agree with the main opinion's first paragraph in Part III.C.2., "Fair and Adequate Representation"; or with Part III.C.3., "Predominance of Common Issues," which is unnecessary to a proper resolution of this matter. Nevertheless, I concur in the result.
HOOPER, C.J., concurs.
MADDOX, Justice (concurring in the result, but dissenting from the failure to reconsider the venue issue).
I concur in the result reached by the majority, which vacates the trial judge's class certification, because I believe the trial judge abused his discretion in permitting an amendment to the complaint more than three years after the case was filed, and after the case had been set for trial and numerous depositions had been taken.
I must respectfully dissent from the failure to address the venue issue. On August 16, 1993, Russell Lands, Inc., and the City of Alexander petitioned this Court for a writ of mandamus requiring the trial judge to transfer the cause to Tallapoosa County. This Court granted the petition in part, but denied it in part, holding that venue was proper in Jefferson County as to Russell Lands, Russell Mills, Avondale Mills, and Alabama Power Company, but that as to Alexander City, the proper venue was Tallapoosa County. Ex parte Alabama Power Co., 640 So.2d 921 (Ala.1994). The plaintiffs then dismissed Alexander City as a defendant, on February 15, 1994, and on July 6, 1994, Alabama Power Company petitioned this Court for a writ of mandamus compelling the trial judge to permit it to file a third-party complaint against Alexander City. This Court denied the petition on August 2, 1994.
It is undisputed that the plaintiffs bought real property located in Tallapoosa County and that the subject matter of their action involves actions allegedly done in Tallapoosa County. In view of that fact, it would seem that the present petitioners have shown a clear legal right to have the action transferred to Tallapoosa County.
In Ex parte Alabama Power Co., this Court correctly held that the proper venue for a claim against Alexander City was Tallapoosa County, relying on § 6-3-11, Ala.Code 1975. That statute provides:
"The venue for all civil actions for damages for personal injury death, or property damage filed against a county or against a municipality shall be in the county or in the county within which the municipality is located or in the county in which the act or omission complained of occurred."
The Court also noted that "[v]enue was proper in Jefferson County as to Russell Lands, Russell Mills, Avondale Mills, and Alabama Power Company." Id., 640 So.2d at 923. It is undisputed that immediately after our ruling in Ex parte Alabama Power Co. the plaintiffs voluntarily dismissed Alexander City as a defendant, even though Alexander City was, and still is, the only entity alleged to be discharging waste water into Lake Martin. It seems undisputed that Alexander City was dismissed as a party solely for the purpose of maintaining this action in Jefferson County.[5]
The only issue presently before this Court pertaining to venue is whether the trial court's class certification requires this Court to revisit its earlier denial of a similar request, in which the defendants had argued that "[p]laintiffs' counsel owe[s] an obligation to the prospective class members to re-examine the venue issue and to allow this case to proceed in the venue which is most convenient to the class as a whole." Verified Motion to Stay Proceedings Pending Ruling *967 on Russell & Avondale's Motion to Transfer, Petitioners' Exhibit 42, p. 3, citing Koster v. Lumbermens Mutual Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 831-32, 91 L.Ed. 1067 (1947); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir.1987), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); Burstein v. Applied Extrusion Technologies, Inc., 829 F.Supp. 106, 111 (D.Del.1992). The petitioners argue in their petition, at p. 31:
"Alabama Code section 6-3-21.1, which codifies the doctrine of forum non conveniens, is virtually identical to 28 U.S.C. Section 1404(a), the federal venue transfer statute. See Ex parte Washburn, 567 So.2d 317, 318 (Ala.Civ.App.1990). This Court has repeatedly cited to federal case law in interpreting and applying Section 6-3-21.1. See, e.g., Ex parte Townsend, 589 So.2d 711, 714-15 (Ala.1991); Ex parte Johnson, 638 So.2d 772, 774 (Ala.1994)."
The petitioners further argue:
"A consideration of the class treatment factors, and the new plaintiff class, coupled with the following undisputed record evidence in this case mandates the transfer of this action to the Circuit Court of Tallapoosa County:
"1. Virtually all of the class members, including all named plaintiffs (except June Brand), reside in Tallapoosa County and none reside in Jefferson County (Depositions of Joe Sullivan, p. 6; Stella Gould, p. 7: Tommy Gould, p. 5; Bill Brand, p. 5; Richard Brand, p. 6; Terri Brand, p. 5; Darnell Sullivan, pp. 15-16, Exhibit 11).
"2. All of the real property which is the subject of the claims asserted in this action is in Tallapoosa County (Kelley Aff. Exhibit 12; Smith Aff., Exhibit 51).
"3. At least twenty-six (26) members of the class have affirmed on oath that if they were to elect, or were forced, to participate in this action, they would prefer that trial of this case be held in Tallapoosa County, No class members other than the named plaintiffs have expressed a preference for Jefferson County. (Exhibits 38; 12.)
"4. Due to the individual nature of claims, including mental anguish and nuisance, all class members will have to attend and testify at trial. A trial of this case will very likely take three weeks or more. (McWhorter Aff., Exhibit 5.) Therefore, conducting this litigation in Jefferson County exclusively on behalf of a Tallapoosa County plaintiff class will cause a significant inconvenience to those class members. The Raintree Subdivision is approximately 75 miles from the Jefferson County Courthouse, but Raintree is only approximately 5 miles from the Tallapoosa County Courthouse in Alexander City. (Hymer Aff., Exhibit 50.)
"5. All relevant events, including all alleged trespasses and nuisances, concerning the plaintiffs' claims, and all damages, if any occurred in Tallapoosa County.
"6. The Russell and Avondale facilities relating to this action and Alexander City's Sugar Creek Plant are all located in Tallapoosa County (Tuggle Aff., Exhibit 9; Chieves Aff., Exhibit 52).
"7. The portions of Lake Martin relating to this action are in Tallapoosa County (Tuggle Aff., Exhibit 9).
"8. Defendants will request various viewings in order for the jury to render a fair verdict in this case, including a viewing of the plaintiffs' properties, a viewing of the operations of the Sugar Creek Properties, a viewing of the operations of the Sugar Creek Plant, and a viewing of the water conditions around the Raintree Subdivision in comparison with other areas of Lake Martin. All such viewings could take place, as a practical matter, only if the trial were held in Tallapoosa County. (McWhorter Verification attached to Conditional Motion to Transfer, Exhibit 39.)
"9. All parties have heretofore designated expert witnesses, none of whom reside or maintain an office in Jefferson County.
"10. The large majority of potential witnesses  including the named plaintiffs (except June Brand), other Raintree residents, and virtually all other potential fact witnesses in this case  reside in Tallapoosa County. A trial in Jefferson County, as compared with a trial in Tallapoosa County, necessarily will entail much more time and expense relating to attendance of fact *968 witnesses. (McWhorter Verification, Exhibit 39; Chieves Aff., Exhibit 52.)"
Even though we now vacate the trial court's class certification, I still believe that we should revisit our ruling as to venue and the question whether Alexander City is a necessary party to this action. Rule 19(a), Ala. R. Civ. P., provides:
"A person who is subject to jurisdiction of the court shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action."
(Emphasis added.) The last sentence of Rule 19(a) states that if the party to be joined would render venue improper then that party shall be dismissed. This is not the case here. This Court has already held that venue would be proper for this action in Tallapoosa County with Alexander City as a party. In fact, it appears to me that the only reason Alexander City was dismissed was to maintain venue in Jefferson County.
The Rules of Civil Procedure should be construed to assure the just, speedy, and inexpensive resolution of every case on its merits. See Rule 1, Ala. R. Civ. P. I further believe that the trial court abused its discretion in not adding Alexander City as a necessary third-party defendant,[6] on the grounds that Alexander City is the only entity discharging waste and may be liable for indemnification as to one or all of the present defendants. Regardless of our determination on the class certification issue, the venue issue was properly raised and presented to this Court and, even though it was hinged on the class action certification, I believe that we should reconsider our previous holding; therefore, I must respectfully dissent from the failure to do so.
SEE, J., concurs.
COOK, Justice (dissenting).
I respectfully dissent. The majority issues a writ of mandamus directing the Honorable William Wynn, judge of the Jefferson Circuit Court, to decertify an opt-out class certified pursuant to Ala. R. Civ. P. 23(b)(3). It does so despite its express  and correct  determination that "the facts and issues involved in this controversy make it particularly appropriate for class relief." 703 So.2d at 965 (emphasis added).
Indeed, it is because the main opinion's rationale is internally inconsistent and its holding a non sequitur that I dissent. In particular, in Part III.C.2 the main opinion concludes that "the decision of the class representatives to forgo seeking any form of injunctive relief [would be] highly detrimental to the rights of the other class members." 703 So.2d at 964. It faults the class representatives for failing to seek injunctive relief, although it acknowledges that this remedy was forgone as part of a calculated, hardfought litigation strategy to keep this action out of Tallapoosa County, "where two of the defendants are major employers and where, the plaintiffs allege, those two defendants have great influence over public opinion." 703 So.2d at 964. Evidently, the writer of the main opinion, and perhaps other Justices in the majority, are concerned that a judgment in this action will trigger the doctrine of res *969 judicata as a bar to injunctive relief, should such relief be desired in the future.
But this is an opt-out class. Consequently, those class members who might be concerned about the absence of a claim for injunctive relief will, if they choose to opt out, not be bound by any judgment rendered in this case, but will be free to bring their own actions. Indeed, had the trial judge certified a non-opt-out class, I might be inclined to concur with the main opinion. But, because that is not the case, the fear expressed by the main opinion is unjustified and its reasoning in this respect is inconsistent.
The main opinion attempts to explain this inconsistency by stating:
"Although this is a Rule 23(b)(3) class action that allows plaintiffs to opt-out of the class, the complexity of this environmental pollution case and the great cost to litigate the claims in individual actions  factors which weigh heavily in favor of class relief  would significantly discourage otherwise interested class members from opting out of the class and pursuing their own individual actions that would include claims for injunctive relief."
Part III.C.2., 703 So.2d at 964-65. As to this rationale, however, the majority's ruling is a non sequitur. In other words, the decision to decertify a class action can hardly be justified upon the premise that an action is feasible only as a class action. Moreover, it overlooks the fact that this action was commenced in 1993 as an individual action, and, in fact, proceeded for several years without class allegations.
In short, there is no logical or legal basis for vacating the trial court's well-reasoned order certifying a Rule 23(b)(3) class. Therefore, I respectfully dissent.
SHORES, J., concurs.
NOTES
[1] Russell Lands and Alexander City have since been dismissed from the lawsuit.
[2] Cochrane and City Realty were dismissed from the lawsuit. As property owners within the Raintree subdivision, both are now members of the plaintiff class.
[3] An attorney for one of the defendants made this argument to the trial court during a March 11, 1997, hearing relating to the plaintiffs' motion for class certification:

"And I would like to point this out to you: Because the five plaintiff families and because the lawyers of the five plaintiff families insist on venue in Jefferson County and trial in this trial court, that neither of the named plaintiffs nor their counsel are suitable or adequate class representatives because they can only make claims for money damages based on alleged property damage, and they can't entertain any claims for injunctive relief because injunctive relief, venue for injunctive relief would only be appropriate in Tallapoosa County."
[4] The plaintiffs had filed a complaint against these defendants before they filed the complaint that is the basis of this present lawsuit. That first complaint, which was dismissed before service was made on the defendants, contained counts seeking injunctive relief. The plaintiffs have admitted to this Court that the first complaint was dismissed in order to avoid venue in Tallapoosa County. Thereafter, the plaintiffs filed a complaint that did not contain counts for injunctive relief; that complaint is the basis of this lawsuit.
[5] The petitioners state in their petition that "[t]he plaintiffs have acknowledged that the dismissal of the city was not based upon any consideration of the merits of the claims against the City, but was done solely to maintain venue in Jefferson County. (Mrs. Sullivan, p. 35; Mr. Gould, p. 26, Exhibit 11)." Petition at p. 5.
[6] Rule 14(a), Ala. R. Civ. P.; see, also, the 1973 commentary to Rule 14, which reads:

"The Court's discretion could then be invoked in a ruling on the motion. If the claim is a proper third-party action and will not prejudice other parties to the litigation, there is no reason to deny an application under Rule 14(a). See, 6 Wright & Miller, Federal Practice and Procedure, Civil, § 1443 (1971); 3 Moore's Federal Practice, ¶ 14.05(1) (2d ed.1968)."