Compass Bank and Compass Bancshares, Inc. (hereinafter referred to jointly as "the Compass defendants"), appeal from a class-certification order obtained by the plaintiffs in this case, who are present and former customers of the Compass defendants (hereinafter referred to as "the plaintiff customers"). We vacate the class-certification order and remand the case.
 I. Factual Background and Procedural History
The plaintiff customers are customers who are dissatisfied with the order in which the Compass defendants pay checks and other items presented for payment on the same day, i.e., the "posting order." A problem arises when a customer, contrary to the customer's agreement with the bank, writes a check for which there are insufficient funds in the customer's account. Specifically, the plaintiff customers complain about the order in which the Compass defendants have chosen to post their customers' checks to their accounts.
Section 7-4-303(b), Ala. Code 1975, allows a bank to choose its posting order; that section provides that "items may be accepted, paid, certified, or charged to the indicated account of its customer in any order." A bank may choose between several different posting orders, including (1) *Page 669 
posting high to low by amount, (2) posting sequentially by check number, (3) posting low to high by amount, and (4) posting in random order. Before 1995, the Compass defendants posted checks low to high by amount. From the beginning of 1995 until September 23, 1997, the Compass defendants posted sequentially by check number. From September 23, 1997, to the present, the Compass defendants have posted high to low by amount.
The plaintiff customers allege that the Compass defendants changed their posting order to a high-to-low-by-amount posting order because, they say, that posting order is more profitable for the bank. When a bank uses a high-to-low posting order, the plaintiff customers say, more checks are dishonored because of insufficient funds, thus allowing the bank to charge a greater number of service charges. The Compass defendants point out that some customers prefer the high-to-low posting order because, they say, it means posting in that order allows a bank to pay significant checks, such as checks for mortgage payments, tax payments, insurance premiums, or vehicle payments, which carry greater economic consequences for nonpayment than do service charges for insufficient funds. They also point out that no posting order is satisfactory to all customers.
In November 1999, the Compass defendants revised their deposit agreements to add what they describe as posting-order disclosures and mandatory arbitration provisions. The Compass defendants say that all customers who opened accounts after October 1998 were provided with the revised agreements, and that the revised agreements were mailed to all existing customers in December 1999 or January 2000. In essence, the Compass defendants say that all customers who continued to maintain their accounts after January 2000 received the revised deposit agreements. The plaintiff customers acknowledge that existing Compass customers received the revised deposit agreements in January 2000.
The Compass defendants have 237 branches, over 6,000 employees, and over 500,000 checking account customers in Alabama, Florida, and Texas. The named plaintiffs, Jucretia Snow, Mary Kennedy, and Charles Butler, Jr., maintained accounts at different Compass Bank branches in Alabama.
In July 1998, Annette Rago sued Compass Bank in the Mobile Circuit Court, alleging breach of contract and fraudulent suppression, resulting from Compass Bank's alleged failure to disclose its posting order to its customers. Rago sued individually and on behalf of a purported class of Compass customers "who incurred service charges that were not agreed upon." Compass Bank answered, claiming that it had implemented its posting order pursuant to § 7-4-303(b), Ala. Code 1975, for its branches in Alabama and pursuant to § 674.303(2), Fla. Stat. Ann., for its branches in Florida. In September 1998, Rago added Compass Bancshares, Inc., as a defendant. Compass Bancshares answered, stating that it was a corporation distinct from Compass Bank and that it had no relationship with or contract with Rago. Compass Bank then filed a compulsory counterclaim against the putative class for all unpaid fees and charges due in connection with their Compass Bank accounts. At some point after the purported class action was filed, Compass Bank in Texas merged with Compass Bank in Alabama and Florida.
Rago withdrew as a named plaintiff in March 2000; she was replaced by Snow, Kennedy, and Butler. They filed an amended complaint in which they alleged breach of contract, fraudulent suppression, and conversion arising out of the Compass *Page 670 
defendants' alleged failure to disclose their posting order and the effect that the posting order had on the fees collected for insufficient funds. Snow, Kennedy, and Butler also requested a declaratory judgment declaring the high-to-low posting order "to be in violation of applicable laws" and a permanent injunction enjoining the Compass defendants from posting checks in a high-to-low order. Shortly after Snow, Kennedy, and Butler were substituted as plaintiffs, the Compass defendants raised as an affirmative defense to Snow and Kennedy's claims the alleged agreement to arbitrate their claims. Butler had closed his account before February 2000, so he was not subject to the arbitration agreement. Discovery proceeded pursuant to the trial court's scheduling order.
On July 31, 2000, the plaintiff customers filed a motion for class certification, and the Compass defendants filed a response opposing class certification and a motion to compel arbitration. The trial court held a hearing on these motions on October 19, 2000. The motions were submitted based on the parties' briefs and on the evidentiary submissions. No witnesses testified at the hearing. The Compass defendants say that counsel for the plaintiff customers conceded at the hearing that the plaintiff customers were not seeking certification as to the conversion claim. The plaintiff customers' counsel subsequently submitted to the trial court proposed orders granting the motion to certify a class and denying the motion to compel arbitration. The only change the trial court made when it entered those orders, the Compass defendants say, was that it crossed out the word "Proposed" on each order. The trial court signed the orders on December 13; they were entered on December 15. The class-certification order, as entered, certified all of the plaintiff customers' claims, including the conversion claim that the plaintiff customers had conceded at the hearing, and included all of the plaintiff customers, even those who the Compass defendants argue were subject to arbitration. Compass appeals pursuant to § 6-5-642, authorizing an immediate appeal of a class-certification order.
 II. Standard of Review
We must first determine the appropriate standard of review when deciding whether a trial court has properly certified a class. The Compass defendants argue that because Alabama law now provides that class-certification orders may be appealed as a matter of right, this Court should apply a de novo standard of review. See § 6-5-642. No live witnesses testified, they argue, and the court's order was based on the written record. The Compass defendants do not, however, cite any cases in which an appellate court has applied a de novo standard of review to review of a class-certification order.
The plaintiff customers argue that this Court has always applied an abuse-of-discretion standard to review of class-certification orders, and that it should continue to do so. The plaintiff customers rely uponAtlanta Casualty Co. v. Russell, 798 So.2d 664 (Ala. 2001); and Ex parteHousehold Retail Services, Inc., 744 So.2d 871 (Ala. 1999). They correctly note that the abuse-of-discretion standard is consistent with the federal standard of review of class-certification orders, including review of orders appealed as of right under the new Rule 23(f), Fed.R.Civ.P. See Murray v. Auslander, 244 F.3d 807 (11th Cir. 2001);Prado-Steiman v. Bush, 221 F.3d 1266 (11th Cir. 2000); Allison v. CitgoPetroleum Corp., 151 F.3d 402 (5th Cir. 1998). In Allison, the United States Court of Appeals for the Fifth Circuit stated:
 "[T]he district court maintains substantial discretion in determining whether to certify a class action, a decision we *Page 671 
 review only for abuse. Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation. Whether the district court applied the correct legal standard in reaching its decision on class certification, however, is a legal question that we review de novo."
151 F.3d at 408 (citations omitted). See also Alfa Life Ins. Corp. v.Johnson, 822 So.2d 400, 414 (Ala. 2001) ("This Court applies the abuse-of-discretion standard in reviewing a trial court's class-certification order.").
This Court will continue to apply an abuse-of-discretion standard of review to a trial court's class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision. We must determine, therefore, whether the trial court abused its discretion in certifying the class in this case and whether it applied the correct legal standard in reaching that decision.
 III. Satisfaction of Rule 23(b)(3) Criteria
Initially, "[i]n order to obtain class certification, the plaintiff must establish all of the criteria set forth in Rule 23(a) and one of the criteria set forth in Rule 23(b)." Ex parte Gold Kist, Inc.,646 So.2d 1339, 1341 (Ala. 1994).
 "Rule 23(a) provides four prerequisites to bringing a class action: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class; 3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and 4) it must appear that the representative parties will fairly and adequately protect the interests of the class.
"Rule 23(b) provides as follows:
 "`An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 "`(1) the prosecution of separate actions by or against individual members of the class would create a risk of
 "`(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 "`(B) adjudications with respect to individual members of the class which would as a [practical] matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 "`(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 "`(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or *Page 672 
 against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.'"
646 So.2d at 1341.
In addition to arguing that the plaintiff customers failed to satisfy the requirements of Rule 23(a), the Compass defendants argue that the trial court erred in certifying the plaintiff customers' breach-of-contract and suppression claims, pursuant to Rule 23(b)(3), because numerous individual issues predominate and make the class unmanageable. Therefore, they argue, the plaintiff customers did not produce sufficient evidence to support a finding that common questions of fact or law predominate and that a class action is superior to other methods of adjudication, as required by Rule 23(b)(3). We note that an abuse of discretion in certifying a class action may be predicated upon a showing by the party seeking to have the class-certification order set aside that "the party seeking class action certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of Rule 23." Ex parte Green Tree Fin. Corp., 684 So.2d 1302, 1307 (Ala. 1996). Thus, we must consider the sufficiency of the evidence submitted by the plaintiff customers. Because we conclude that the plaintiff customers did not produce sufficient evidence to satisfy the requirements of Rule 23(b)(3), we do not address the Compass defendants' arguments regarding the requirements of Rule 23(a).
In Shelley v. AmSouth Bank (No. CIV.A.97-1170-RV-C, July 24, 2000) (S.D.Ala.) (unpublished order), aff'd, 247 F.3d 250 (11th Cir. 2001) (table), in a case involving claims against AmSouth Bank virtually identical to the claims asserted in this action, the United States District Court denied certification of the plaintiffs' breach-of-contract and fraudulent-suppression claims pursuant to Rule 23(b)(3), Fed.R.Civ.P. The court concluded that the plaintiffs did not satisfy the predominance or superiority requirements as to either of those claims. Because the Alabama Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure, cases construing the federal rules are considered authoritative in construing the Alabama rules. Cutler v. OrkinExterminating Co., 770 So.2d 67 (Ala. 2000).
 A. The Fraudulent-Suppression Claim
In concluding that the Shelley plaintiffs did not satisfy the predominance requirement as to their fraudulent-suppression claim, the district court stated:
 "The predominance requirement `tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). It is `far more demanding' than the commonality requirement. Id. at 624. The Court must examine each alleged cause of action and `conside[r] what value the resolution of the class-wide issue will have in each class member's underlying cause of action.' Rutstein v. Avis Rent-A-Car Systems, Inc., 211 F.3d 1228, 1234 (11th Cir. 2000).
 "The plaintiffs' fraudulent suppression cause of action, under Alabama law, requires proof of[:] (1) a duty to disclose the facts; (2) concealment or non-disclosure of the facts by the defendant; (3) materiality of the fact not disclosed; (4) the plaintiff's reliance on the non-disclosure; (5) reasonableness of the plaintiff's reliance under the circumstances; (6) proximate cause; and (7) injury to the plaintiff. See, e.g., General Motors Corp. v. Bell, 714 So.2d 268, 280 (Ala. 1996); Crowder v. Memory Hill *Page 673 
 Gardens, Inc., 516 So.2d 602, 604-05 (Ala. 1987). The duty to disclose must be based on a confidential relationship or the particular circumstances of the case. General Motors v. Bell, 714 So.2d at 280.
 "The plaintiffs argue . . . that the defendant's written disclosures fail to disclose the policies at issue. These issues are common to all class members' fraudulent suppression claims. At least the following issues, however, must be addressed individually with respect to each class member: (1) whether the defendant disclosed its policies to the depositor other than through its written disclosures, for example, [orally] or through individualized written communications; (2) whether the depositor relied on the defendant's failure to disclose its policies; (3) whether any such reliance was reasonable under the circumstances; and (4) the existence and amount of damage suffered by the depositor as a result of the defendant's non-disclosure of its policies. Moreover, to prove damages each depositor would have to show that she acted in reliance on a belief that the defendant utilized some posting order other than descending dollar value. . . . The identification of the posting order relied on by each depositor represents an additional individualized issue.
 "These individualized issues necessary to each class member's fraudulent suppression claim heavily predominate over the common issues identified by the plaintiffs. Indeed, such fraud claims are uniquely unsuited for class treatment. See, e.g., Andrews v. American Telephone Telegraph Co., 95 F.3d 1014, 1025 (11th Cir. 1996) (reliance, proximate cause and damage elements of RICO claim based on mail and wire fraud were individualized issues predominating over alleged common issues of a scheme to defraud and affirmative misrepresentations). As the plaintiffs have stipulated, . . . `a fraud cause of action cannot be certified when individual reliance will be an issue.' Castano v. American Tobacco Co., 84 F.3d 734, 745 (5th Cir. 1996) (citing Simon v. Merrill Lynch, Pierce, Fenner Smith, Inc., 487 F.2d 880, 882
(5th Cir. 1973)).
 "More generally, when (as the plaintiffs admit is the case here) `every member of the class will have to prove actual damage in order to receive compensation for their loss,' the challenged policy or practice at issue `cannot possibly predominate over all the other issues in the case that are necessarily capable of only individualized resolution.' [Rutstein, 211 F.3d at 1241] (emphasis added) (Section 1981 claim). `The idea that individual injury could be settled on a class-wide basis is preposterous.' Id. at 1239.
". . . .
 "Finally, the defendant has counterclaims against some class members due to checks presented against insufficient funds. . . . Such counterclaims are compulsory. See Plant v. Blazer Financial Services, Inc., 598 F.2d 1357, 1364 (5th Cir. 1979) (debt counterclaim under [the Truth in Lending Act, 15 U.S.C. § 1601 et seq.,] is compulsory). These counterclaims would require additional individualized determinations of damages accruing to the defendant, and counterclaim defendants would be required to raise individual defenses, such as waiver and estoppel. See Heaven v. Trust Company Bank, 118 F.3d 735, 738 (11th Cir. 1997) (trial court properly considered the additional individual determinations required by compulsory counterclaims)."
Shelley (footnotes omitted).
The Compass defendants argue that the trial court erred in certifying the plaintiff customers' fraudulent-suppression claims because, they say, individual issues such as *Page 674 
reliance and damages predominate. See Household Retail Servs., 744 So.2d at 879, holding that reliance is an essential element of a fraudulent-suppression claim. Here, the Compass defendants argue, the trial court's order certifies a class of customers represented by plaintiffs who knew the information they claim the Compass defendants failed to disclose before they incurred the charges they seek to have refunded. It is clear that here, like the Shelley case, individual inquiry will be required to determine at the very least what information, if any, each plaintiff customer received about the posting order, the extent to which each plaintiff customer relied on the Compass defendants' alleged failure to disclose its policies, and whether and to what extent each plaintiff customer was harmed by the alleged failure to disclose. Whether the Compass defendants had a duty to disclose and breached that duty as to any of the plaintiff customers are also individual issues that are inappropriate for class certification. See Exparte Government Employees Ins. Co., 729 So.2d 299 (Ala. 1999) (the trial court was required to examine all of the facts and circumstances relating to each class member to determine whether, under Alabama law, the defendant had a duty to disclose).
In this case, the trial court would have to inquire into the circumstances surrounding the accounts of thousands of customers of the Compass defendants. For example, of the named plaintiffs, when Rago, Snow, and Butler inquired about the Compass defendants' posting order, they were informed that the Compass defendants posted in a high-to-low order. Kennedy testified that she was not given this information when she inquired, but said that she learned that the Compass defendants used the high-to-low posting order by reviewing her bank statements, deposit slips, and check register. Snow testified that she also was able to determine that the Compass defendants used the high-to-low posting order by reviewing printouts provided to her by the bank. Butler testified that he learned about the high-to-low posting order by speaking with a bank representative. Kennedy and Snow received written disclosures informing customers that under Alabama law the Compass defendants could choose to post checks in any order. Kennedy testified that it is likely that she read the disclosure; Snow testified that she could not remember receiving it. Butler closed his account before the disclosure was sent. Thus, for thousands of customers, the trial court would have to inquire how they learned, if indeed they did learn, about the posting order used by the Compass defendants; whether they received a written disclosure and, if so, whether they read it; whether they spoke with a bank representative and, if so, with whom they spoke and the substance of the conversation; whether they were able to determine the posting order used by examining their own bank statements, and, if so, what information and calculations they used to make such a determination. In addition, the trial court would need to inquire of each customer when he or she learned that the Compass defendants used a high-to-low posting order and whether and to what extent that information affected their banking practices with the Compass defendants. Apparently Snow, Kennedy, and Rago continued to incur insufficient funds ("NSF") fees after they became aware of the Compass defendants' high-to-low posting order and its effect on NSF fees, while Butler closed his account. The differences in the experiences of the four named plaintiffs illustrates how extensive the individual inquiry would be in this case.
Furthermore, the Compass defendants have asserted counterclaims against Butler and other members of the putative class *Page 675 
who have unpaid fees and charges such as checks the Compass defendants paid even though there were insufficient funds in the accounts and for which they seek reimbursement. These counterclaims present individual issues as well. See Ex parte Water Works Sewer Board of City ofBirmingham, 738 So.2d 783 (Ala. 1998), in which this Court reversed a class-certification order where, as here, the trial court refused to consider the defendant's counterclaims against members of the class who were delinquent in paying their bills.
In concluding that the Shelley plaintiffs did not satisfy the superiority requirement as to their fraudulent-suppression claims, the district court focused on the manageability of the putative class action, stating:
 "With respect to [the difficulties likely to be encountered in the management of a class action], `[i]ssues of class manageability encompass the "whole range of practical problems that may render the class action format inapposite for a particular suit."' Andrews v. ATT, 95 F.3d at 1023 (quoting Eisen v. Carlisle Jacquelin, 417 U.S. 156, 164 (1974)). If serious manageability problems exist, it is no answer to say they will be resolved later in some unexplained or uncertain manner. Id. (quoting Windham v. American Brands, Inc., 565 F.2d 59, 70 (4th Cir. 1977) (en banc), cert. denied, 435 U.S. 968 (1978)). The manageability difficulties inherent in the class treatment of the plaintiffs' fraudulent suppression claim render it unfit for class certification.
 "First, superiority analysis is `intertwined' with predominance analysis; when there are no predominant common issues of law or fact, `class treatment would be either singularly inefficient . . . or unjust.' Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 n. 12 (11th Cir. 1997). As noted, individual issues in this case greatly predominate over common ones.
 "Second, `[t]he greater the number of individual issues, the less likely superiority can be established.' Castano v. American Tobacco, 84 F.3d at 745 n. 19. As noted, the plaintiffs' fraudulent suppression claim requires resolution of several individual issues, each of them composed of numerous individualized sub-issues.
 "Third, the greater the number of individual determinations that must be made, the less manageable a class action becomes. See Andrews v. ATT, 95 F.3d at 1024-25. The enormous size of the proposed class serves as a tremendous multiplier of the individual issues and sub-issues. That 25% of the named plaintiffs are subject to compulsory counterclaims indicates that a large number of counterclaims are likely as well.
 "Fourth, the need to apply the laws of multiple jurisdictions exacerbates the manageability problem. Andrews v. ATT, 95 F.3d at 1024-25. . . . The defendant operates in four states, and some of its consumer account holders likely reside in other states as well, especially adjoining ones. Under Alabama conflicts law, `an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.' Fitts v. Minnesota Mining Manufacturing Co., 581 So.2d 819, 820 (Ala. 1991). Thus, the substantive law of at least four states, and likely numerous others, would have to be applied to the plaintiffs' fraudulent suppression claim.
 "Fifth, the complexity of the individual issues weighs further against manageability of the class action. Most if not all of the individual issues identified *Page 676 
 above would require extensive individualized examination of each class member. Assessment of reasonable reliance, for example, must be `based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties.' Foremost Insurance [Co.] v. Parham, 693 So.2d [409] at 421 [(Ala. 1997)]. . . .
 "Similarly, the determination of each class member's damages has not been shown to require only a few mouse clicks to calculate. Given daily transactions for 500,000 account holders for over seven years . . ., almost one billion (1,000,000,000) daily transaction histories are at issue. . . . Because each depositor's damages must be measured with reference to the alternate posting order identified by the depositor as the one she believed to be in place, that posting order must be identified separately for each depositor before her damage[s] determination may proceed. . . .
 "The plaintiffs offer no solution to these intractable manageability problems, failing even to address any issue but damages. In response to the . . . daunting array of steps necessary to determine each class member's damages, the plaintiffs respond cavalierly that the amount of such damages `is a calculation the Defendant can perform easily by the use of its computers.'"
Shelley.
Likewise, in this case, as we have previously concluded, individual issues predominate over common ones, especially the issue of each plaintiff customer's knowledge of the posting order used by the Compass defendants and the extent to which he or she relied on that knowledge. In addition, the need to apply the laws of at least three states — Alabama, Florida, and Texas — exacerbate the manageability problems of this case. Finally, the plaintiff customers have not offered any standard by which damages can be measured on a class-wide basis. Each plaintiff customer's damages will differ, depending on what posting order the customer thought the Compass defendants used before he or she learned that it posted high to low. The defense of mitigation of damages and other defenses also raise individual issues. The potential for highly individualized damages computations, complicated by the presence of counterclaims, pretermits class-wide resolution of these disputes, which arise out of a myriad of transactions between the Compass defendants and its numerous customers.
After reviewing the evidence presented in this case and the persuasive rationale of Shelley, we conclude that as to their fraudulent-suppression claim the plaintiff customers failed to satisfy the predominance and superiority requirements of Rule 23(b)(3).
 B. The Breach-of-Contract Claim
In concluding that the Shelley plaintiffs did not satisfy the predominance requirement as to their breach-of-contract claim, the district court stated:
 "The elements of a breach of contract claim under Alabama law are as follows: (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. State Farm Fire Casualty Co. v. Slade, 747 So.2d 293, 303
(Ala. 1999).
 "This claim raises individual issues that predominate over the common issues identified in Part II.B. [whether the bank breached its contract with depositors because of its alleged failure to disclose its posting-order policy]. Causation, as well as the defense of failure to mitigate, requires individual *Page 677 
 assessments of what each depositor understood to be the defendant's policies, which in turn requires assessments of such things as what information each depositor was given in addition to the written documents and what each depositor did do or would have done once armed with sufficient awareness of the defendant's actual policies. As with the plaintiffs' fraudulent suppression claim, the element of damages requires a series of individual determinations. Again, the defendant's compulsory counterclaims would raise additional individual issues."
Shelley.
In this case, proof of the plaintiff customers' breach-of-contract claims will require individual inquiry into each plaintiff's reasonable contemplation as to the Compass defendants' practice, any course of dealing between the parties, and/or any oral statements made to the plaintiff customers by individual employees of the Compass defendants. SeeMann v. GTE Mobilnet of Birmingham, Inc., 730 So.2d 150 (Ala. 1999), andEx parte Green Tree Fin. Corp., 723 So.2d 6, 10 (Ala. 1998). In both cases this Court rejected class certification in a contract action where the terms of the contract were not clear or where individual testimony would be necessary on the contract claims. Furthermore, in determining damages in the present case, individual inquiry will be necessary to determine the extent to which each plaintiff customer failed to mitigate his or her damages by continuing to incur NSF charges after learning about the posting order and to determine whether a counterclaim by the Compass defendants applies to that customer. Furthermore, the Compass defendants argue that not all customers were harmed by its high-to-low posting order and that there may well be customers who preferred the high-to-low posting order or who actually benefited by it if a mortgage payment, tax payment, insurance premium, or vehicle payment was made that prevented the assessment of a penalty that would have exceeded an NSF service charge.
Section 6-5-641 places the burden of coming forward with sufficient proof on the party seeking certification. Although the plaintiff customers argue that there is no evidence indicating the existence of customers of the Compass defendants who benefited from the high-to-law posting order, testimony describing this phenomenon as it related to a virtually identically situated customer in a case against another bank appears in the record. In fact, it is so offensive to common sense to suggest the contrary of something that is virtually axiomatic — that there are such customers among the many thousand class members — that we visit upon the class representatives the consequences of the failure to demonstrate their nonexistence. We therefore agree with the Compass defendants that the individual inquiry would have to be made of each customer before that customer's damages could be determined.
In concluding that the Shelley plaintiffs did not satisfy the superiority requirement as to their breach-of-contract claim, the district court again focused on manageability, stating:
 "The same manageability problems that plague the plaintiffs' fraudulent suppression claim engulf their breach of contract claim as well. In addition, with no possibility of punitive damages, class members' potential individual recovery is restricted to their actual damages. While some class members may have significant actual damages, others have small actual damages. Nevertheless, their inclusion in the class exposes them to the defendant's compulsory *Page 678 
 counterclaims, which exposure may easily exceed their potential recovery. These class members' consequent interest in prosecuting and defending individual actions reflects that the class action vehicle is not superior. See Heaven v. Trust Company Bank, 118 F.3d at 738 (trial court properly considered that the class members' exposure as counterclaim defendants `could well exceed the amount they might recover' on the class claim). . . ."
Shelley.
As was the case in Shelley, manageability problems "engulf" the plaintiff customers' breach-of-contract claim as well as their fraudulent-suppression claim. In addition to those manageability problems discussed in connection with the fraudulent-suppression claim, because punitive damages are not available in a breach-of-contract claim, those plaintiff customers who incurred minimal service charges, but who are subject to a potential counterclaim, may risk exposure to liability that exceeds any potential recovery. In such cases, a class action would not meet the superiority requirement.
After further reviewing the evidence presented in this case and the persuasive rationale of Shelley, we conclude that the plaintiff customers failed to satisfy the predominance and superiority requirements of Rule 23(b)(3) as to their breach-of-contract claim.
Because the plaintiff customers did not satisfy the predominance or superiority requirements of Rule 23(b)(3) as to either their fraudulent-suppression or breach-of-contract claims, the trial court abused its discretion in certifying a Rule 23(b)(3) class as to those claims.
 IV. Satisfaction of Rule 23(b)(2) Criteria
The Compass defendants argue that the trial court erred in certifying a class pursuant to Rule 23(b)(2), Ala.R.Civ.P. They argue that the class certification cannot stand under Rule 23(b)(2) because, they say, the plaintiffs have failed to show (1) that the Compass defendants have acted or refused to act on grounds generally applicable to the class, (2) that final injunctive relief with respect to the class as a whole is appropriate, and (3) that the money damages sought are merely incidental to the injunctive relief requested.
As a general rule, certification of a class pursuant to Rule 23(b)(2) is improper if the primary relief sought is money damages. See, e.g.,Jefferson v. Ingersoll Int'l Inc., 195 F.3d 894, 898 (7th Cir. 1999); andBoughton v. Cotter Corp., 65 F.3d 823, 827 (10th Cir. 1995). Three of the four counts of the plaintiff customers' complaint seek money damages. The claim for injunctive relief, added almost two years after the complaint was filed, includes claims for punitive damages and for restitution of NSF fees. The plaintiff customers argue that the money damages they seek are incidental to the injunctive relief and flow directly from the injunction, so that the injunctive relief remains predominant. Therefore, they argue, a Rule 23(b)(2) certification is proper in this case.
The United States Court of Appeals for the Fifth Circuit has held that under Rule 23(b)(2), monetary relief is considered predominant in class actions unless it is clearly incidental to the nonmonetary relief sought. Allison v. Citgo Petroleum, supra, 151 F.3d at 415 (employment discrimination case). Incidental damages, the Fifth Circuit held, are those flowing directly from a defendant's liability to the class as a whole in connection with claims for injunctive or declaratory relief and are to be viewed as a group remedy. Id. The court went on to hold that the district court properly denied class certification because calculation of damages would require individualized determinations of the *Page 679 
defendant's liability to each plaintiff, and that in such a case, damages were not incidental to the injunctive relief requested. Id. at 416. As we have previously stated, the question of damages in this case will require extensive individual inquiries of each plaintiff customer, thus making the certification of a class pursuant to Rule 23(b)(2) improper. Therefore, the trial court abused its discretion in certifying a Rule 23(b)(2) class.
 V. Conclusion
The trial court abused its discretion in certifying a class in this case, under both Rule 23(b)(2) and 23(b)(3). We vacate the class-certification order, and remand the cause for an order or for further proceedings consistent with this opinion. Because we conclude that the class-certification order must be vacated, we need not address the other issues raised by the Compass defendants.
ORDER VACATED AND CAUSE REMANDED.
Moore, C.J., and See, Brown, Harwood, Woodall, and Stuart, JJ., concur.
Houston and Johnstone, JJ., recuse themselves.