[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 767 
Regions Bank appeals from the trial court's order certifying a class of bondholders in the class action filed by David E. Lee against Regions Bank on claims alleging fraudulent suppression, breach of fiduciary duty, negligence, wantonness, and conversion and seeking an accounting.
 I.
In February 1999, Spiral Industries, Inc. ("Spiral"), and the Industrial Development Board of the City of Russellville (the "IDB") entered into an agreement pursuant to which the IDB agreed to issue $7.3 million in bonds to finance the construction of Spiral's new manufactured-home manufacturing facility in Russellville. Spiral, a manufactured-home manufacturing business located in Russellville, Alabama, was incorporated in 1984. In September 1998, Leonard James, the sole shareholder of American Republic Trust ("ART"), had negotiated the sale of 100% of Spiral's stock to ART. James contacted the investment banking firm of Blount Parrish Company about serving as the underwriter for the bonds, and Blount Parrish agreed to serve. Blount Parrish and Fred Simpler, an attorney who acted as bond counsel in the transaction, drafted the documents authorizing the issuance of the bonds; those documents included the bond indenture.[1]
The bond indenture gave James and R.C. Godsey, a manager at Spiral and a former shareholder in Spiral, the authority to requisition funds from the bond proceeds. ART was the guarantor, or the entity responsible for repaying the bonds.
As underwriter, Blount Parrish was required to exercise "due diligence" in the issuance of the bonds. It is undisputed that Blount Parrish did not perform any due diligence investigation of James or ART. Blount Parrish did not perform a background check on James nor did it obtain financial statements from ART.
The bond issue closed on February 13, 1999. Pursuant to the bond indenture, Regions Bank agreed to act as the trustee for the $7.3 million generated by the sale of the bonds. On that same day, the IDB and Spiral entered into a lease agreement that provided for the completion and the ongoing operation of the manufacturing facility to be financed by the bond issue. Under the lease agreement, Spiral agreed to lease the facility and to make rental payments to the IDB, which, in turn, would enable it to pay the interest and principal on the bonds as they became due. The bond proceeds were to be used for *Page 768 
constructing and equipping the manufactured-home manufacturing facility. Also, on the day of the closing, Spiral entered into an agreement with BP holdings[2] pursuant to which BP holdings was to provide "financial advisory services" in exchange for 10% of the stock in ART. James signed the first requisition to pay the closing fees of $510,000 to Blount Parrish for serving as underwriter, $50,000 to Fred Simpler for serving as bond counsel, and $7,500 to Regions Bank for serving as trustee under the indenture. As underwriter, Blount Parrish purchased the bonds at a closing discount, and the bond proceeds were deposited with Regions Bank, the trustee. Following the closing, Blount Parrish distributed an offering memorandum to market the bonds to the general public.[3]
Between February 25, 1999, and August 13, 1999, James signed 22 requisitions accounting for $6,109,500 of the bond proceeds. In August 1999, Godsey contacted Bill Blount, a principal in Blount Parrish, to express his concern about the financial condition of the construction project and the depletion of the bond proceeds. Bill Blount and two other principals in Blount Parrish flew to Russellville and supposedly audited ART's records. Afterwards, Blount told Godsey that "there was nothing they could do because ART was current on all of their indebtedness to the bond." By late November 1999, several vendors in the construction project had filed mechanic's or materialmen's liens.
On January 7, 2000, the IDB held a meeting. The meeting was attended by, among others, Bill Blount and Bruce Rinehart, a manager of Regions Bank's corporate trust department, to discuss the situation at Spiral. Thereafter, Blount filed a shareholder's derivative action seeking to oust James from Spiral. Ultimately, on February 28, 2000, Blount purchased ART's interest in Spiral through a stock purchase and indemnity agreement. Blount then became the acting chief executive officer of Spiral. Between April 2000 and November 2000, Blount sent numerous letters to Regions Bank regarding his efforts at Spiral to complete the construction project. Regions Bank states that in December 2000 it became apparent that the construction project would not be completed; therefore, it declared that the bond issue was in default, and it sent notice of the default to the bondholders.
In February 2001, Blount Parrish filed a class-action complaint against Regions Bank, as trustee under the indenture, alleging breach of fiduciary duty and negligence and seeking an accounting. Blount Parrish argued in its complaint that Regions Bank, as trustee, "allowed Spiral to withdraw and use bond proceeds for the purchase of assets and real property wholly unrelated to the Project." Regions Bank advised counsel for Blount Parrish, Andy Campbell, that it intended to raise inadequacy of the class representative as a defense to class certification because, it said, Blount Parrish could not sue itself on behalf of the putative class. In September 2001, Blount Parrish amended the complaint, withdrawing as class representative and substituting as the class representative David E. Lee, who purchased his bonds in August 2000 from Lance Cooper, *Page 769 
an investment broker for American Municipal Securities; Cooper previously had worked for Blount Parrish.[4] In late November 2001, Andy Campbell withdrew from representing the putative class, and Doyle Fuller and Susan Copeland entered appearances on behalf of the plaintiff, David Lee.
On April 13, 2001, Spiral filed a petition in bankruptcy. On April 19, 2001, Blount and Derek Parrish, a principal in Blount Parrish, incorporated Diamond Homes, another manufactured-home company. The bankruptcy trustee for Spiral agreed to allow Diamond Homes to lease all of Spiral's equipment for $250 per month. Godsey testified at his deposition that the fair market monthly rental value of that equipment was between $25,000 and $50,000.
On January 4, 2002, the trial court held the first class-certification hearing in this case. Regions Bank argued that Lee was inadequate as class representative because he had failed to pursue claims the class might have against Blount Parrish and its principals. At the hearing, the trial court stated, "I really don't understand why they're not in it. You know, they are the underwriters. . . . I hope y'all are going to answer all of this for me because I don't understand why they haven't been named." Lee argued that he was free to choose which defendants to sue, and that he had not decided whether to name Blount Parrish or its principals as defendants. The trial court determined that the class-certification issue was premature and stated, "[M]aybe you need to look at this and see what you're going to do with it. . . . It might take care of itself."
In February 2002, Lee moved to intervene in a securities fraud action filed in the federal court by Regions Bank on May 25, 2001, against Blount Parrish based on alleged misrepresentations and omissions in the offering memorandum for the bond issue.
In November 2002, Lee again amended the state-court class-action complaint against Regions Bank, alleging additional claims of wantonness, willfulness, fraudulent suppression, and conversion. Lee argued in the second amended complaint that Regions Bank had delayed providing notice to the bondholders of the occurrence of events of default and that Regions Bank had failed to timely exercise certain remedies available under the bond indenture.
On April 16, 2003, the trial court conducted a second class-certification hearing. Carolyn Duncan, a securities lawyer and former chief counsel of the Alabama Securities Commission, testified as an expert witness on behalf of Regions Bank at the hearing regarding the general duties of an underwriter in a bond issue such as the one here; according to her testimony, Blount Parrish had failed to perform its duties as underwriter. The trial court granted Lee's motion for class certification. Pursuant to the trial court's request, Lee's counsel submitted a proposed order and, on May 19, 2003, the trial court entered an order certifying a Rule 23(b)(3), Ala. R. Civ. P., class of "all holders of . . . the Spiral Industries bonds." On May 29, 2003, Regions Bank appealed the class-certification order.
 II.
We apply "`an abuse-of-discretion standard of review to a trial court's class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision to certify a class.'" Alfa *Page 770 Life Ins. Corp. v. Hughes, 861 So.2d 1088, 1094 (Ala. 2003) (quoting Smart Prof'l Photocopy Corp. v. Childers-Sims,850 So.2d 1245, 1248 (Ala. 2002)). The party seeking certification has the burden of proving that it is entitled to class certification. § 6-5-641(e), Ala. Code 1975.
 III.
Regions Bank argues that the trial court exceeded its discretion when it certified the class in this case because, it argues, Lee is inadequate as the class representative, and because, it argues, individual issues predominate over common issues in this case. See Rule 23(a) and (b)(3), Ala. R. Civ. P. In addition, Regions Bank argues that the trial court failed to conduct a "rigorous analysis" as required by § 6-5-641(e), Ala. Code 1975.
Regions Bank argues that Lee's failure to pursue claims it alleges the class has against Blount Parrish and its principals renders Lee inadequate as class representative. Regions Bank argues that Blount Parrish, as the underwriter of the bond issue, was required to exercise due diligence in ascertaining the likelihood of the success and the financial solvency of the project. In support of its argument, Regions Bank cites Ex parteRussell Corp., 703 So.2d 953 (Ala. 1997) (holding that owners of lots in a subdivision, in failing to sue the city and failing to assert claims for injunctive relief, inadequately represented the class).
Lee argues that any complaints the bondholders may have against Blount Parrish are wholly unrelated to the claims he asserts against Regions Bank. Lee argues that Blount Parrish was in no way involved in the alleged improper payment of requisitions submitted by James or the alleged failure to notify the bondholders that an event of default had occurred; therefore, Lee concludes that the decision "not to bring totally unrelated
securities fraud claims against Blount Parrish, is not antagonistic to the class." In support, Lee cites Pickett v.Iowa Beef Processors, 209 F.3d 1276 (11th Cir. 2000), which states that any antagonism between the class representative and the class will defeat class treatment only where the alleged antagonism goes to the specific issues in controversy.
Pursuant to Rule 23(a), Ala. R. Civ. P., one or more members of a class may sue as representative parties on behalf of all members of the class only if:
 "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
Rule 23(a)(4), Ala. R. Civ. P., requires that the attorneys representing a class be qualified, experienced, and generally able to conduct the litigation and that the class representative not have interests antagonistic to those of the class. AmchemProds., Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231,138 L.Ed.2d 689 (1997). In Pickett v. Iowa Beef Processors, the United States Court of Appeals for the Eleventh Circuit stated: "`It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.'" 209 F.3d at 1280 (quoting 7A Charles Alan Wright 
Arthur R. Miller, Federal Practice and Procedure § 1768 at 326 (2d ed. 1986)). "However, a party's claim to representative status is defeated only if the conduct between the representative and the class is a fundamental one, *Page 771 
going to the specific issues in controversy." 209 F.3d at 1280.
The trial court's class-certification order regarding the adequacy issue concluded that any potential claims the bondholders might have against Blount Parrish relate to the sale of the bonds. The trial court initially noted that the parties agreed that any federal securities-law claims the bondholders might have against Blount Parrish are within the exclusive jurisdiction of the federal courts. With regard to the state securities-law claims, the trial court stated:
 "David Lee has no personal claim for fraud against Blount [Parrish] — he never received nor read the offering memorandum in which the alleged misrepresentations occur. But, Regions argues that Mr. Lee could still bring those claims under a `fraud on the market' theory. That might work in federal court, but the Alabama Supreme Court has specifically rejected that theory. Ex parte Household Retail Servs., Inc., 744 So.2d 871, 883 n. 2 (Ala. 1999). It seems counterproductive to criticize a party for not bringing claims that he has no right to bring."
Regions Bank argues that this Court's holding in Ex parteRussell, 703 So.2d 953, an opinion authored by Justice Butts in which two Justices concurred in the result, two Justices concurred in the result in part and dissented as to the failure to consider the venue issue, and two Justices dissented, controls the outcome of this case.[5] For the reasons discussed below, we decline to apply the holding in Russell to this case.
In Ex parte Russell, owners of real property near Lake Martin sued Russell Corporation, Avondale Mills, Inc., Russell Lands, Inc., Alabama Power Company, and the City of Alexander City, alleging nuisance, trespass, and wrongful interference with the right to peaceful use and possession of their property.703 So.2d at 955. The owners argued that the defendants were responsible for polluting the water at Lake Martin and that the lake had become dangerous for recreational use. Id. The owners later dismissed Alexander City as a defendant in an effort to avoid having the case tried in Tallapoosa County. Id. at 956. The owners thereafter amended their complaint to include class allegations. Id. Russell argued that, because the owners had dismissed certain defendants, namely Alexander City (the only entity that actually discharges water into Lake Martin), and also had failed to assert other potentially viable claims in order to preserve venue in Jefferson County, the owners did not adequately represent the interests of the class as a whole. Id. at 960.
Justice Butts reasoned:
 "Although this is a Rule 23(b)(3) class action that allows plaintiffs to opt-out of the class, the complexity of this environmental pollution case and the great cost to litigate the claims in individual actions — factors which weigh heavily in favor of class relief — would significantly discourage otherwise interested class members from opting out of the class and pursuing their own individual actions *Page 772 
that would include claims for injunctive relief. Class representatives should not place such a burden on class members. Thus, certification of this class and continued litigation of the limited claims alleged to a final judgment would have, under the doctrine of res judicata, the very likely effect of barring all the members of the plaintiff class from ever seeking injunctive relief in relation to the alleged environmental contamination caused by the defendants' present alleged course of conduct. Although the named plaintiffs have implied that injunctive relief would be a part of any class settlement, an attempt at reaching a settlement through mediation failed and it cannot be assumed that such a settlement would occur in the future.
 "In sum, the named plaintiffs are free to take whatever steps are legally available to them in order to pursue their personal strategy of litigating their chosen claims in a forum other than Tallapoosa County. However, the named plaintiffs, by entirely forgoing any and all types of injunctive relief for the sole purpose of maintaining venue outside Tallapoosa County, have failed to fairly and adequately represent the interests of all members of the class."
703 So.2d at 964-65. In support, Justice Butts cited Herbert Newberg Alba Conte, Newberg on Class Actions § 17.12 (3d ed. 1992); however, the relevant language from § 17.12 when read in full, states:
 "Failure to plead all causes of action raises potential problems that may hurt class members on res judicata grounds by splitting their causes of action and barring future suits, but such problems may only be academic as a practical matter. Failure to join all defendants, however, is a strategy choice and, except for a showing of unique circumstances, probably would not be ground for claiming inadequacy."
Newberg on Class Actions § 17.12 at 331-32 (4th ed. 2002). Lee in his brief to this Court implies that Regions Bank argues that Blount Parrish is a necessary party under Rule 19, Ala. R. Civ. P. However, Regions Bank does not make this argument in its initial brief to this Court, nor does it respond to Lee's argument in its reply brief.[6]
In its class-certification order in this case, the trial court interpreted Russell as follows:
 "Russell holds that a named plaintiff in a class action who fails to present claims against [d]efendants in the case, or dismisses [d]efendants from the case, may fail the adequacy test if, and only if, those actions would have a detrimental effect on the claims or rights of *Page 773 
absent class members. Russell was based on concerns of res judicata, and has no application in this case."
We agree; unlike Russell, this case does not present res judicata concerns. In § 16.21, Newburg states:
 "As in nonclass actions, application of the doctrine of res judicata depends on the conjunctive presence of the following factors:
"(1) the parties must be the same;
"(2) the causes of action must be the same;
 "(3) the matters raised in the litigation were raised or could have been raised in the previous litigation."
In this case, Lee's decision not to assert any claims against Blount Parrish as a defendant in the class action does not bar, on the ground of res judicata, the other bondholders from bringing claims against Blount Parrish because factors (1) and (2) are not present. The claims relating to Region Bank's alleged failure to timely notify bondholders of the occurrence of an event of default are related to Regions Bank's status as the trustee under the bond indenture. Therefore, any potential claims the bondholders might have against Blount Parrish — a defendant different from the defendant in this case — would relate to separate causes of actions.[7] Thus, Regions Bank has not shown that the trial court exceeded its discretion when it determined that Lee met the adequacy requirement.[8]
Regions Bank further argues that the trial court exceeded its discretion in certifying Lee's claims for class treatment because, it argues, individual issues predominate over common issues in this case. As a threshold matter, Regions Bank argues that the trial court failed to conduct a rigorous analysis in determining whether Lee met his burden of proving his entitlement to class certification because the trial court did not explain each of the four elements of Rule 23(a), and it did not explain how Lee has proven each of those elements. Bill Heard ChevroletCo. v. Thomas, 819 So.2d 34, 37 (Ala. 2001). Because Regions Bank and Lee stipulated to the first three prerequisites in Rule(23)(a), Ala. R. Civ. P., the trial court's order is not deficient for failing to explain how Lee had proven each of those Rule 23(a) requirements. See § 6-5-641, Ala. Code 1975 (a "court may treat a factor as having been established if all parties to the action have so stipulated on the record and if the court shall be satisfied such factor could be proven to have been established").
Regions Bank argues that the claims based upon its alleged failure to timely disclose to the bondholders the occurrence of events of default are improper for class certification because individual issues are presented by the duty to disclose and reliance. See e.g., Hughes, 861 So.2d at 1100-01 *Page 774 
("Because reasonable reliance is an `essential element' of suppression, we find that the individual issues of reliance preclude class-wide treatment of the plaintiff policyholders' suppression claim."); Compass Bank v. Snow, 823 So.2d 667, 674
(Ala. 2001) ("Whether the Compass defendants had a duty to disclose and breached that duty as to any of the plaintiff customers are also individual issues that are inappropriate for class certification."); Ex parte Government Employees Ins. Co.,729 So.2d 299, 305 (Ala. 1999) ("Alabama caselaw emphasizes that in a case alleging fraudulent suppression the trial court must examine the facts to determine whether the defendant had a duty to disclose.").
Further, Regions Bank argues that in order to determine the damages as to each bondholder, the trial court would have to find individualized issues of fact. In response, Lee argues that the trial court properly found that Bruce Rinehart, a vice president at Regions Bank and head of its corporate trust department, gave deposition testimony that established that common issues predominate over individual issues in this case. Rinehart testified that the duties Regions Bank owes to the bondholders pursuant to the bond indenture are duties owed to each bondholder and that the indenture does not create any special rights for any bondholder that are different from those of the other bondholders. Lee argues that the duty to the bondholders flows from a single document — the bond indenture; therefore, he argues, it is not necessary to determine the issue of reliance as to the individual bondholders. However, the portion of Rinehart's deposition testimony cited by the trial court refers to Lee's claim that Regions Bank improperly paid certain requisitions for the construction project financed by the bonds. Regions Bank does not argue that the claim relating to wrongful payment of requisitions presents Rule 23(b)(3) problems; instead, it argues that the fraudulent-suppression claim presents such problems.
A plaintiff seeking class certification must prove that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the matter in controversy. Rule 23(b)(3), Ala. R. Civ. P. "`[T]he greater the number of individual issues, the less likely it is that a court may properly find that a class action is the superior means of litigating the plaintiff's claims.'" Hughes,861 So.2d at 1103-04 (quoting Ex parte Green Tree Fin. Corp., 723 So.2d 6, 9
(Ala. 1998)). See also Reynolds Metals Co. v. Hill,825 So.2d 100, 108 (Ala. 2002).
The element of a duty to disclose in a fraudulent-suppression case is analogous to the element of reliance in a misrepresentation case. Mack v. General Motors AcceptanceCorp., 169 F.R.D. 671, 677 (M.D.Ala. 1996). When fraudulent suppression is at issue, the trial court "must examine the facts to determine whether the defendant had a duty to disclose." Exparte Government Employees Ins. Co., 729 So.2d at 305. "The impact of this law . . . on the class certification decision, is fatal." Mack, 169 F.R.D. at 677. See Hughes,861 So.2d at 1095; Reynolds Metals Co., 825 So.2d at 105; Compass Bank v.Snow, 823 So.2d at 673; Ex parte Government Employees InsuranceCo., 729 So.2d at 305. In Compass v. Snow, this Court, holding that individual issues relating to reliance and damages predominated over issues common to the class, noted:
 "[I]ndividual inquiry will be required to determine at the very least what information, if any, each plaintiff customer received about the posting order, the *Page 775 
extent to which each plaintiff relied on the Compass defendants' alleged failure to disclose its policies, and whether and to what extent each plaintiff customer was harmed by the alleged failure to disclose. Whether the Compass defendants had a duty to disclose and breached that duty as to any of the plaintiff customers are also individual issues that are inappropriate for class certification."
823 So.2d at 674.
The bondholders have the burden of proving that common questions of law or fact predominate over individual claims.Hughes, 861 So.2d at 1095. Both Lee in his brief and the trial court in its class-certification order concede that a fraud claim is not certifiable as a class action when individual reliance is an issue. See Compass Bank, 823 So.2d at 673.[9] However, Lee claims that the duty to disclose in this case is owed collectively to the bondholders because the source of that duty flows from a single document — the bond indenture. Therefore, Lee claims, Compass and Ex parte Government Employees are distinguishable. In addition, Lee claims that there are no individual questions of reliance in this case because, according to the bond indenture, any action the bondholders would have taken upon notification of a default would have had to have been taken collectively by the bondholders. Further, Lee states that individual questions as to damages are not present in this case because the harm was to the bond fund as a whole and the damages the class seeks, that of restitution of the bond fund, is a collective remedy. Lee argues, "Restitution of the bond fund would be on a class-wide basis and the only issue would be in allocating the actual amount owed to each bondholder after restitution is made to the bond fund."
In determining that pursuant to Rule 23(b)(3), Ala. R. Civ. P., common questions of law and fact predominate over individual issues, the trial court states in its class-certification order:
 "In this case, the Court was presented with deposition testimony of Bruce Rinehart, Vice-President and Senior Trust Officer of Regions [Bank]. Mr. Rinehart stated unequivocally that the duties owed by Regions [Bank] to the bondholders were owed to all bondholders alike and hence any actions of Regions [Bank] would affect all bondholders. This fact alone shows that common questions of fact and
law are predominate in this case."
(Citations omitted; emphasis in original.)
Lee correctly states in his brief that sections 6.4, 6.5, and 6.8 of the bond indenture require that if the bondholders want to pursue the remedies provided for in the indenture a majority of the bondholders must act. However, Lee fails to recognize that in determining whether a majority of bondholders would have agreed to pursue a course of action specified in the bond agreement, individual issues of fact would have to be resolved. For instance, the trial court would have to determine whether the individual bondholders received notice of the occurrence of an event of default,[10] if a majority of the bondholders would have agreed to take action upon *Page 776 
notice of the default and what specific action they would have elected to take. It is possible that an individual bondholder would have elected to sell his or her bonds, or the individual bondholder could have decided to do nothing. See, e.g., VoyagerIns. Cos. v. Whitson, 867 So.2d 1065, 1074 (Ala. 2003) ("We do not know whether the customers relied on varying representations made by the sales representatives instead of on the alleged nondisclosure or, for that matter, whether the information allegedly not disclosed would have made a difference to a consumer determined to close a transaction for which credit was essential.").
Furthermore, some of the bondholders purchased their bonds immediately following the closing of the bond issue while some of the bondholders did not purchase their bonds until after the date Lee alleges Regions Bank should have sent notice of the occurrence of events of default. According to the record, Lee purchased his bonds in August 2000 at 80.8% of face value. In February 2001, after the first notice of default was sent and after this action was filed, the bonds had a value of 69.2% of face value. In this case, in order to calculate the damage incurred by each bondholder, it would be necessary to determine the value of the bonds at the time each bondholder purchased them, the value of the bonds at the time each bondholder allegedly should have received notice of the occurrence of the events of default, and the value of the bonds at the time that each bondholder actually received notice of the occurrence of the events of default. Because of the existence of individual issues of fact, we conclude that Lee has failed to satisfy the predominance and superiority requirements of Rule 23(b)(3), Ala. R. Civ. P, with regard to the fraudulent-suppression claim.
 IV.
The trial court exceeded its discretion in certifying the class. Accordingly, we vacate the class-certification order and remand this case for the trial court to enter an order consistent with this opinion.[11]
ORDER VACATED; CASE REMANDED.
NABERS, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.
[1] A bond indenture is "[a] contract between a bond issuer and a bondholder outlining a bond's face value, interest rate, maturity date, and other features." Black's Law Dictionary 193 (8th ed. 2004).
[2] Bill Blount stated in his deposition that BP Holdings is a holding company "set up by the principals of Blount Parrish to own . . . certain things that [the principals of Blount Parrish] didn't really want the firm, for whatever reason, to own and show on its balance sheet."
[3] Before the bond closing, Blount Parrish had obtained commitments from various investment brokers to buy the bonds.
[4] The second amended complaint names as class representative "David E. Lee in his capacity as Trustee for the David E. and Mary T. Lee Revocable Trust ('Bondholder')."
[5] Justice Houston, concurring in the result in Ex parteRussell, specifically stated in his special writing that he did not agree with the main opinion insofar as it reversed the class-certification order on the basis that the property owners did not fairly and adequately represent the class. Justice Maddox wrote an opinion — which the author of this opinion joined — concurring in the result and expressing no opinion as to the adequacy issue. Finally, Justices Cook and Shores dissented from the main opinion's resolution of the adequacy issue. Therefore, a majority of the Justices did not concur in the disposition of the adequacy issue in Russell — not even a plurality of Justices concurred; therefore, the law as stated in Russell is not binding on this Court.
[6] In American Trading Production Corp. v. Fischbach Moore, Inc., 47 F.R.D. 155, 156 n. 2 (N.D.Ill. 1969), the court stated:
 "Claiming that plaintiffs cannot adequately represent the class, defendants stress plaintiffs failure to join a potential defendant. But, under Illinois law, a tort plaintiff need not sue all possible defendants. Moreover, if defendants believe other parties are liable to them for the fire, they may implead them as third party defendants under F.R.C.P. 14."
(Citation omitted.) At the second class-certification hearing, the trial court asked Regions Bank why it did not file a third-party complaint against Blount Parrish. Counsel for Regions Bank stated that it did not believe Regions had "a direct claim" against Blount Parrish. However, Lee argues that Regions Bank, as trustee under the bond indenture, had the right to assert claims against Blount Parrish on behalf of the bondholders. Lee also argues that Regions Bank, as trustee, could have filed a compulsory counterclaim against Blount Parrish as the original plaintiff in the class action. See Rule 13(a), Ala. R. Civ. P.
[7] But see Feinstein v. Firestone Rubber Co.,535 F.Supp. 595, 606 (S.D.N.Y. 1982) (stating that the class representative's decision to assert only claims of breach of an implied warranty — when other possible claims of wrongful death, personal injury, and property damage exist — presents "putative class members with significant risks of being told later that they had impermissibly split a single cause of action").
[8] Regions Bank also argues that Lee has failed to articulate a strategic reason for his failure to plead additional claims and to name Blount Parrish as a defendant. While Regions Bank points out that in Russell the property owners' decision to dismiss certain defendants from the action and to forgo certain claims was strategic in that the owners were trying to avoid venue in Tallapoosa County, it does not cite any authority for the proposition that Lee was required to articulate a similar strategic reason in this case.
[9] Lee admits in his brief to this Court that the fraudulent-suppression claim "could conceivably not be proper for certification."
[10] Notices of the occurrence of an event of default are usually sent to the registered owner (which may or may not be the individual bondholder). In addition, the complaint filed in this case alleges that certain bondholders spoke with a representative of Regions Bank before the first notice of default. Regions Bank argues that it is probable that those bondholders telephoned Regions Bank only because they heard that Spiral might be in trouble. Regions Bank argues that absent an individualized inquiry, it is impossible to speculate what each bondholder would have done had it been informed earlier of the events of default. For example, Regions Bank notes that at least one bondholder, Blount Parrish, knew information about the project and about the possibility of default as early as August 1999.
[11] Regions Bank argues that this Court should vacate the class-certification order as to the fraudulent-suppression claim and any other claims relating to the alleged failure to timely notify bondholders of the occurrence of events of default. We conclude that the trial court is in a better position to determine whether, based on the facts of this case and this Court's conclusion that individual issues of fact exist as to the fraudulent-suppression claim, any other claims relate to the alleged failure to timely notify bondholders of the occurrence of events of default and whether class certification is proper as to those claims.